[S. F. No. 12678. In Bank.—September 12, 1927.]

ALFRED I. ESBERG et al., as Members of the Board of Education of the City and County of San Francisco, Petitioners, v. JOHN B. BADARACCO et al., as Members of the Board of Supervisors of the City and County of San Francisco, Respondents.

[1] SCHOOL LAW—TAX FOR SCHOOL PURPOSES—BUDGET OF BOARD OF EDUCATION—POWER OF SUPERVISORS.—The board of supervisors of the City and County of San Francisco has no discretion to revise, change, or modify the budget for school purposes prepared and presented by the Board of Education of said city and county, and to fix the tax rate accordingly, but must fix such a rate as will raise the amount of money specified in the budget of the Board of Education without diminution.

[2] ID.—PUBLIC SCHOOL SYSTEM—MATTER OF GENERAL CONCERN.— The school system of the state is a matter of general concern as distinguished from a "municipal affair," as that term is considered in connection with charter cities.

[3] ID.—CONFLICT OF LAW—CONTROL OF STATE LAW.—The effect of the framework of laws surrounding and supporting the public school system of this state is that the acts of the legislature, within constitutional bounds, are controlling over conflicting provisions of freeholders' charters; but such charters may provide for matters not enumerated in the general laws and not in conflict therewith, including matters in furtherance of the purpose of the general laws of the state, also such matters concerning school management and supervision as are specifically authorized in the constitution.

[4] ID.—SCHOOL DISTRICTS—CONSTRUCTION OF POLITICAL CODE.—Since the adoption of the Political Code, it has been provided in section 1576 thereof that each city in the state shall constitute a separate school district and shall be governed by its board of education or board of trustees. The school district and the city may comprise the same territory, but each derives its power from a different source, the powers of the city being derived from its charter, those of the school district from the provisions of the Political Code.

[5] ID.—SAN FRANCISCO SCHOOL DISTRICT.—The fact that the city of San Francisco has also the characteristics of a county, does not

1. See 23 Cal. Jur. 63.
2. See 18 Cal. Jur. 814; 23 Cal. Jur. 25.
3. See 18 Cal. Jur. 814; 23 Cal. Jur. 26.
4. See 23 Cal. Jur. 38, 40.

extinguish the school district established therein as a corporate entity long before the adoption of the freeholders' charter.

[6] ID.—CONTINUANCE OF BOARD OF EDUCATION.—The present Board of Education of the City and County of San Francisco is the successor of the board of education established under acts of the legislature as far back as 1856 (Stats. 1856, p. 154).

[7] ID.—GOVERNMENT OF SCHOOL DEPARTMENT—POWER OF BOARD OF EDUCATION—CONSTRUCTION OF STATUTES.—An examination of legislation applicable to boards of education in charter cities, including the school department of the city and county of San Francisco, discloses that the board of education of said city and county is the governing board of the school department and responsible to the people of the city and county through the manner of the appointment of the members thereof by the mayor and confirmation by the electors.

[8] ID.—SCHOOL DISTRICT OF SAN FRANCISCO—CONSTRUCTION OF CONSTITUTION.—The amendment of section 6 of article XI of the constitution in 1920 makes it especially clear that the territory comprised within the city and county of San Francisco is, for school purposes, a school district.

[9] ID.—CITY AND COUNTY OF SAN FRANCISCO—JUDICIAL NOTICE.—Judicial notice is taken of the fact that there is but one city and county in the state of California, viz., the city and county of San Francisco, and the constitutional amendment of 1920 therefore applies directly to the city and county of San Francisco and provides therein for the levy of a "school district tax."

[10] ID.—CONFLICT OF STATE LAW WITH CHARTER—SECTION 1612A, POLITICAL CODE.—Portions of section 1612a of the Political Code with reference to levying taxes for school purposes make plain the obvious conflict between the powers lodged in the board of education to determine the amount of money to be raised for school purposes and the power conferred on the board of supervisors under the provisions of the charter of the city and county of San Francisco and the subject is therefore controlled by the state law.

[11] ID.—MANDATORY PROVISION—POPULOUS COMMUNITIES.—The provisions of section 1612a of the Political Code are mandatory and make no exception of populous and prosperous communities, and so long as the tax limit prescribed by law is not exceeded, the matter of conferring powers upon boards of education to fix the budget for school purposes is one of legislative policy with which the court may not interfere.

[12] ID.—LEVY OF TAX BY COUNTY AUDITOR—CONSTITUTIONAL LAW—SEVERABLE PROVISIONS OF ACT.—If the provision of section 1612a of the Political Code, authorizing the county auditor to levy

8.    See 23 Cal. Jur. 64.

the required tax for school purposes in the event the board of supervisors refuses or neglects to make the levy, is unconstitutional, under the provisions of section 13 of article XI of the constitution, providing that the legislature shall not delegate to any "special commission, private corporation, company, association or individual," any power to levy taxes, this provision is severable from the remainder of the section, but the inclusion of the provision serves to accentuate the plain intent of the legislature to make the board of supervisors merely the instrumentality through which the tax levy for school purposes is to be accomplished.

[13] ID.—BOARD OF EDUCATION—SCHOOL DIRECTORS—CONSTRUCTION OF CHARTER—CONSTITUTION.—The board of education as the "school directors," under the San Francisco charter, does not answer the description of a "special commission, private corporation, company, association or individual," as those terms are used in section 13 of article XI of the constitution.

[14] ID.—PROVIDING FOR TAX LEVY—CONSTRUCTION OF CONSTITUTION. When the legislature has authorized the board of education, the duly constituted governing board of the school department, to fix the amount to be raised and has required the board of supervisors to levy the tax to provide the sum required, the legislature has "provided for" the levy of the tax as required by the constitution, and there is no constitutional inhibition against the conferring of such power on the board of education, although the full exercise of the power of taxation may necessitate the joint action of both boards—the determination of the amount by one board and the levy of the tax by the other.

[15] ID.—INTENT OF LEGISLATURE—CONSTRUCTION OF STATUTES.—That the legislature fully intended to vest the board of education of municipalities with the full power to determine the amount of money to be required for the needs of the public schools is made manifest by the action of the legislature in its recent amendment to section 1838 of the Political Code changing the word "may" to "must" in defining the duty of the board of supervisors in the matter of the adoption of the estimates of the board of education as to the amount of money required for the purchase of school lots or the building, purchasing or making alterations, additions or repairs of school buildings. This section was evidently amended to make its provisions conform with the provisions of section 1612a of the Political Code.

(1) 35 Cyc., p. 1016, n. 23.   (2) 35 Cyc., p. 817, n. 65.   (3) 35 Cyc., p. 818, n. 67.   (4) 35 Cyc., p. 833, n. 86.   (6) 35 Cyc., p. 877, n. 80.   (9) 23 C. J., p. 83, n. 91.   (11) 12 C. J., p. 887, n. 38.   (12) 36 Cyc., p. 982, n. 47.   (13) 35 Cyc., p. 1000, n. 90.   (15) 36 Cyc., p. 1160, n. 31.

15.   See 23 Cal. Jur. 66.

APPLICATION for a Writ of Mandate to compel the Board of Supervisors of the City and County of San Francisco to include in its tax levy a certain sum for school purposes. Writ granted.

The facts are stated in the opinion of the court.

Sloss & Ackerman for Petitioners.

John J. O'Toole, City Attorney, for Respondents.

H. W. Hutton for Adolph Uhl, a Taxpayer.

SHENK, J.—This is an original application for a writ of mandate by the Board of Education of the City and County of San Francisco to compel the respondents, as members of and constituting the Board of Supervisors of said city and county, to include in its proposed tax ordinance for the fiscal year ending June 30, 1928, such levy of taxes for school purposes as will produce the sum of $7,621,529, exclusive of amounts required for redemption of school bonds or interest thereon.

There is no dispute as to the facts. Within the time prescribed by law the board of education prepared its budget setting forth the amounts required for the ensuing fiscal year for public instruction in the city and county of San Francisco, including therein the needs for high schools, elementary schools and kindergartens. This budget was prepared on forms prescribed by the board of supervisors and specified the proposed expenditures under the headings, (1) Teachers' Salaries, (2) Other Maintenance Expenditures, and (3) Capital Outlays and Permanent Improvements. The superintendent of schools approved this budget and by computation determined therefrom the total amount of money required to be produced by a school tax after deducting the estimated income from the state of California and all other sources. A copy of the budget so proposed and approved was filed with the board of supervisors and with the auditor as the law requires. From this budget it appears that the board of education has determined that the sum of $7,621,529 is necessary for school purposes for the ensuing school year. The assessed valuation of all of the

202 Cal.—8

taxable property in the city and county for the said fiscal year is $783,000,000, and a tax levy of $.97338 on each $100 valuation of said taxable property is necessary in order to produce the sum required by the board of education. During the months of May and June, 1927, the board of supervisors from time to time considered the budget of the board of education. After examination and consideration of the same, it deducted from the budget the sum of $987,306 and fixed a tax rate for school purposes of $.84729, which would produce approximately the amount allowed by the board of supervisors. The items included in the school budget and disallowed or refused by the board of supervisors were $87,306 on account of salaries, maintenance, and operation, and $900,000 on account of lands, buildings, and repairs. Following the refusal of the board of supervisors to fix a tax rate sufficient to raise the amount required by the board of education, this proceeding was commenced.

[1] The sole question for determination is whether the board of supervisors has discretion to revise, change, or modify the budget as so prepared and presented by the board of education and fix the tax rate for school purposes accordingly; or must the board of supervisors fix such a tax rate as will raise the amount of money specified in the budget of the board of education without diminution? It is the contention of the board of supervisors that a discretion is lodged in that body to fix a budget allowance for the board of education within which the latter board must confine itself in making its expenditures for the ensuing school year. The claim is based principally on section 3 of chapter I of article III of the charter of the city and county as amended in 1925 (Stats. 1925, p. 1172). That section provides that the supervisors shall meet annually between the first Monday of May and the first Monday of June and "make a budget of the amounts estimated to be required to pay the expenses of conducting the business of the city and county for the next ensuing fiscal year." This budget must be prepared in such detail as to the aggregate sum and the items thereof allowed each department as the supervisors deem advisable, except that in departments other than the police, fire, park, playground, public library, and school departments the salaries, wages, and rates of compensation of deputies, clerks, assistants, and employees of all kinds

and classifications shall be itemized in the budget and shall be expended for the purpose for which the same were set apart, and none other. This section of the charter as amended in 1925 expressly repealed all provisions of the charter in conflict therewith.

We had occasion to consider and define the scope of the budget-making power of the board of supervisors under this charter amendment and prior thereto in the recent cases of *Fitzgerald* v. *Badaracco, ante,* p. 18 [258 Pac. 937], *Griffin* v. *Boyle, ante,* p. 95 [259 Pac. 729], and *Jackson* v. *Badaracco, ante,* p. 95 [259 Pac. 729], wherein it was held that the board of public works and the board of election commissioners of said city and county were, as to the expenditures to be made in their several departments, limited to the amounts appropriated by the board of supervisors in the exercise of its budget-making power. The respondents rely especially on the Fitzgerald case as announcing a construction of the charter provisions which should be made applicable to the school department. In that case and in the other recent cases referred to we were dealing with subordinate boards of the city and county concerning which it was entirely competent to provide in the charter for whatever powers, duties, restrictions, and regulations the people of the city and county might desire to prescribe in adopting or amending said charter pursuant to the provisions of the constitution. In those cases the boards are those whose activities, from a governmental standpoint, are primarily, if not wholly, of local concern and subject to charter regulation. But with the school department we are confronted by different and controlling considerations of law. [2] The school system of the state is a matter of general concern as distinguished from a "municipal affair," as that term is considered in connection with charter cities. Article IX of the organic law of California provides for the establishment of a public school system. It is provided in section 1 of that article: "A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the legislature shall encourage by all suitable means the promotion of intellectual, scientific, moral and agricultural improvement." Section 5 of the same article provides that "the legislature shall provide for a system of common schools . . . " Section 6

of the article provides that the legislature "shall provide for" the levy of a "city and county" tax by the board of supervisors for school purposes. By this article of the constitution the people of the state have made the school system a matter of state supervision, and judicial declarations to the same effect are numerous. (*Kennedy* v. *Miller*, 97 Cal. 429 [32 Pac. 558]; *Hancock* v. *Board of Education*, 140 Cal. 554, 561 [74 Pac. 44]; *Los Angeles School District* v. *Longden*, 148 Cal. 380, 383 [83 Pac. 246]; *Board of Education* v. *Davidson*, 190 Cal. 162 [210 Pac. 961].)

[3] The effect of this framework of laws surrounding and supporting our public school system is that the acts of the legislature, within constitutional bounds, are controlling over conflicting provisions of freeholders' charters. "While statutes providing a general system of laws concerning the creation and conduct of common schools prevail over conflicting charter provisions, the charters may provide for matters not enumerated in the general laws and not in conflict therewith, including matters in furtherance of the purpose of the general laws of the state." (18 Cal. Jur. 814 and cases cited.) Likewise the charter may, of course, include such matters concerning school management and supervision as are specifically authorized in the constitution. For example, section 8½ of article XI, as adopted in 1896, provided: "It shall be competent, in all charters framed under the authority given by section eight of article eleven of this Constitution, to provide, in addition to those provisions allowable by this Constitution and by the laws of the state, as follows: . . . 2. For the manner in which, the times at which, and the terms for which the members of the boards of education shall be elected or appointed, and the number which shall constitute any one of such boards." This constitutional provision has remained by continuing amendment to the present time with the enlargement in 1911 in the respect that since that amendment the charter may also provide for the "qualifications, compensation and removal" of members of boards of education. The city and county of San Francisco has availed itself of this constitutional authorization and has, in article VII of its charter, provided for such matters concerning its board of education as it is competent therein to provide. In recognition of the effect of general state laws over school matters within the

city and county, the charter in chapter III of article VII
provides: "In addition to the powers conferred by the gen-
eral laws of the state, the board of education shall have
power . . . " Then follow numerous powers conferred on
the board which it is assumed are not directly conferred by
general law.  [4]  Since the adoption of the Political Code
it has been provided in section 1576 thereof that each city
in the state shall constitute a separate school district and
shall be governed by its board of education or board of
trustees.  The school district and the city may comprise
the same territory, but each derives its powers from a differ-
ent source, "the powers of the city being derived from its
charter, the powers of the school district being derived from
the provisions of the Political Code." (*Los Angeles School
Dist.* v. *Longden, supra,* p. 383.)  [5]  The fact that the
city of San Francisco has also the characteristics of a county,
would not, we think, extinguish the school district estab-
lished therein as a corporate entity long before the adoption
of the freeholders' charter.  [6]  It cannot be doubted that
the present board of education is the successor of the board
of education established under acts of the legislature as far
back as 1856 (Stats. 1856, pp. 154, 155).  That act con-
solidated the city and the county of San Francisco.  In arti-
cle III thereof under the head of "Public Instruction," the
board of education was given power "to determine annually
the amount, not exceeding the rate of thirty-five cents on
each one hundred dollars' valuation upon the assessment-
roll, to be raised by tax upon the real and personal property
within the city and county not exempt from taxation, for
the support of free common schools therein, and for provid-
ing suitable school houses, furniture, libraries and appara-
tus."  It was therefore determined by the legislature at the
early date of 1856 that the board of education of the city and
county of San Francisco should exercise the power to deter-
mine the amount needed for school purposes.  Whether the
exercise of that power was conclusive under the consolidation
act need not now be determined, for the reason that the
legislature, by recent enactment, has provided that such de-
termination shall be conclusive.  [7]  An examination of
legislation applicable to boards of education in charter cities
including the school department of the city and county
of San Francisco convinces us that the board of education

of said city and county is the governing board of the school department, and responsible to the people of the city and county through the manner of the appointment of the members thereof by the mayor and confirmation by the electors. It may also be noted that in chapter I of article III of the charter as amended in 1921, the board of education is referred to as the "school directors" (Stats. 1921, p. 1795). [8] The amendment of section 6 of article IX of the constitution in 1920 makes it especially clear that the territory comprised within the city and county of San Francisco is, for school purposes, a school district, for it is there provided: "The legislature shall provide for the levying of school district taxes by the board of supervisors of each . . . city and county, for the support of public elementary schools, secondary schools, technical schools, and kindergarten schools, or for any other public school purpose authorized by the legislature." [9] Judicial notice is taken of the fact that there is but one city and county in the state of California, viz., the city and county of San Francisco. The constitutional amendment of 1920 therefore applies directly to the city and county of San Francisco and provides therein for the levy of a "school district tax."

[10] Since it is clear that in the conduct of its school affairs the city and county of San Francisco is subject to and is controlled by general law and in all matters of conflict the general law must prevail, it will next be noted what conflict exists between the general laws of the state and the charter provisions respecting the determination of the amount of the expenditures to be made for school purposes. In obedience to the mandate of section 6 of article IX of the constitution as amended in 1920, the legislature enacted section 1612a of the Political Code in 1921 (Stats. 1921, p. 720). In that section it is provided that each board of education shall have the power and it shall be its duty annually in the month of June "to make a school budget showing all the purposes for which the school district will need money and the amount of money that will be needed for each of said purposes for the ensuing year." It is then provided that this budget be filed with the superintendent of schools of the city and county, be examined and approved by him, and after such approval it is made the duty of the superintendent of schools to determine by computation the

total amount shown by the budget to be necessary for school purposes for the ensuing year after deducting income from all other sources. The approval of the budget by the super-intendent of schools is not made a prerequisite to the sub-mission of the budget to the board of supervisors. The section then provides as follows: "The board of supervisors of each . . . *city and county,* MUST annually at the time and in the manner of levying . . . *city and county taxes, levy and cause to be collected* a district tax for each school dis-trict whose budget shows a district tax to be necessary, and to *fix such a rate* for such district tax as will produce at least the amount of district tax money requested by the par-ticular district. If the board of supervisors refuse or neglect to make the levy provided for under this section, then the levy shall be made by the county auditor." The act adding said section 1612a to the Political Code in 1921 expressly repealed all acts and parts of acts "not in harmony" with the new section.

The italicized portions of the foregoing quotations from said section 1612a make plain the obvious conflict between the powers lodged in the board of education to determine the amount of money to be raised for school purposes and the power conferred on the board of supervisors under the provisions of the charter. The powers of the two boards cannot be exercised over the same subject matter at the same time. The law abhors such a conflict of authority, and since the general law is paramount the functions of the board of supervisors in the premises must yield to the au-thority of the state exercised through the constitution and enactments of the legislature.

[11] On oral argument, counsel for respondents con-ceded the plain mandatory force of the language of said section 1612a, but urged that it could not have been intended that this legislative requirement should apply to such com-munities as San Francisco and Los Angeles, where the assessed valuations are of such magnitude as to make it pos-sible for the board of education to specify so large an amount of money to be raised in current taxes as to enable the board to embark on an enterprise of capital construction and extension of school facilities only justifiable under a bond issue. But the statute has made no exception of popu-lous and prosperous communities and we can make none.

Furthermore, it is a matter of common knowledge that in populous centers the need for additional school facilities is a constantly pressing one. The law prescribes a tax limit for school purposes. So long as that limit is not exceeded— and it is not claimed that it is exceeded in this case—the matter of conferring such powers on boards of education is one of legislative policy with which the court may not interfere. It is readily conceivable that some expenditures on capital account may be necessary each year. Additions to existing structures, reconstruction, repairs, and new schoolhouses are essential aids in the promotion of education, and are incidental to the proper maintenance of the school system.

[12] It may well be questioned whether the provision in said section 1612a of the Political Code authorizing the county auditor to levy the required tax in the event the board of supervisors refuses or neglects to make the levy is constitutional under the provisions of section 13 of article XI of the constitution, which provides that the legislature shall not delegate to "any special commission, private corporation, company, association or individual" any power to levy taxes. Assuming said provision of the code section to be invalid, it is clearly severable from the remainder of the section. The inclusion of that provision, however, serves to accentuate the plain intention of the legislature to make the board of supervisors merely the instrumentality through which the tax levy for school purposes is to be accomplished. [13] The board of education as the "school directors" under the charter, does not answer to the description of a "special commission, private corporation, company, association or individual," as those terms are used in the constitutional provision. On the contrary, the board of education is the duly constituted governing board of the public school system of the city and county of San Francisco, established as such under the constitution and laws of the state. It may here be noted that it would have been entirely consistent with our system of government if the power were conferred by the constitution on the legislature to vest authority to levy school taxes directly in the board of education. Separate machinery could then be set up for the levy and collection of the same. However, the simpler and more inexpensive method has been followed, namely, of vest-

ing the legislature with power to ''provide for'' the levy and collection of school taxes by the board of supervisors of the city and county (Const., sec. 6, art. IX). When this method of raising the tax is prescribed the responsibility for the amount to be raised for school purposes is with the board of education.

[14] Counsel appearing for *amicus curiae* urges that since the constitution provides that the legislature ''shall provide for'' the levy ''by the board of supervisors,'' the power to levy the tax carries with it the exclusive discretion to determine the amount of the tax. This is a *non sequitur*. When the legislature has authorized the board of education, the duly constituted governing board of the school department, to fix the amount to be raised and has required the board of supervisors to levy the tax to provide the sum required, the legislature has ''provided for'' the levy of the tax. We find no constitutional inhibition against the conferring of such powers on the board of education, although the full exercise of the power of taxation may necessitate the joint action of both boards—the determination of the amount by one board and the levy of the tax by the other.

Counsel for respondents and for *amicus curiae* rely on *McCabe* v. *Carpenter,* 102 Cal. 469 [36 Pac. 836], as direct authority against the petitioners. But such is not the fact. That case involved the validity of the act of March 20, 1891 (Stats. 1891, p. 182), which provided for the levy of the school tax ''estimated by the county superintendent of schools,'' and it was made the duty of the ''proper authorities'' upon receiving the estimate ''to levy such a rate as will produce the amount estimated.'' It was held that this was an unlawful delegation of legislative authority to an executive officer. That was all that was involved in that case. It was there said, however: ''Looking to the provisions in the general school law, in regard to the discretion of county superintendents, and trustees of school districts, we find they have a wide range of discretion in regard to expenditures. The trustees have, however, no voice in making this estimate; they are not even required to furnish any *data* for it.''

Following the McCabe case, a similar question was presented in *People* v. *Lodi High School Dist.,* 124 Cal. 694 [57 Pac. 660]. In that case the provisions of section 1670 of the Political Code as amended in 1895 (Stats. 1895,

p. 203), were under review, where it was provided that the high school board, among other things, should furnish to the board of supervisors an estimate of the cost of the construction of buildings and conducting the school for the school year. Subdivision 15 of the section provided that when the estimate had been submitted it should be the duty of the tax levying body to levy a tax "sufficient in amount to maintain the high school." It was contended that the decision in the McCabe case rendered this provision unconstitutional, but it was very properly held that when the duty of the board of supervisors was to levy a tax "sufficient to maintain the high school," a discretion was vested in the board of supervisors to determine the sufficiency of the amount, and that the estimate of the school board was advisory only.

The case of *Board of Education of City of Woodland* v. *Board of Trustees,* 129 Cal. 599 [62 Pac. 173], is also relied on by the respondents. It was there held that the board of education of a city organized under the general municipal corporations act must be regarded, not as an independent public entity, but as a component part of the municipality wherein the legislative power is vested in another body. The court was at pains in that case to point out that the decision was to be restricted to a determination of the status of the school departments in cities organized under general law, and not to the status of school departments governed under the provisions of the Political Code. Further, that under the code system the city territory, with its inhabitants, constitutes a school district, a corporate body or *quasi* municipality, distinct from the municipality itself.

Counsel for respondents concedes that the cases relied upon by him arose before the amendment to the constitution in 1920 and the enactment of section 1612a of the Political Code in 1921, but contends that the principles enunciated in the old cases are applicable to the present situation. We deem the recent legislation, both constitutional and statutory, of controlling importance, ·and are satisfied that such recent legislation is applicable to the school department of the city and county of San Francisco. Other cases cited and other points made by the respondents and by counsel for *amicus curiae* have been noted, but it is deemed unnecessary to discuss them. The cases cited are either dis-

tinguishable on the facts or arose before the recent pertinent legislation, and we find nothing in the additional points made which would warrant a different conclusion herein. [15] That the legislature fully intended to invest the board of education of municipalities with the full power to determine the amount of money to be required for the needs of the public schools is further made manifest by the action of the legislature in its recent amendment to section 1838 of the Political Code changing the word "may" to "must" in defining the duty of the board of supervisors in the matter of the adoption of the estimates of the board of education as to the amount of money required for the purchase of school lots or the building, purchasing or making alterations, or repairs of, or additions to school buildings. This section was evidently amended to make its provisions conform with the provisions of section 1612a of the Political Code.

The recent constitutional and statutory provisions referred to were undoubtedly adopted on the theory that boards of education, being constantly in touch with school matters, are more conversant with the needs of the school departments and are in better position to judge of the required expenditures for school purposes. Whether placing the responsibility of determining the amount to be raised for school purposes directly on the shoulders of the boards of education and not on the boards of supervisors be the wiser policy may present a subject of legitimate controversy, but with that policy the courts have nothing to do except to see that constitutional bounds are not transcended. It is to be assumed that the boards of education will exercise proper regard for the rights of the taxpayers to the end that the burden of taxation be not unduly extended. The responsibility for fixing the amount to be raised by taxation for school purposes is with those boards and for such responsibility the members thereof, it is assumed, may be held accountable to the electorate as provided by law.

Let the peremptory writ issue as prayed.

Waste, C. J., Koford, J., *pro tem.,* Preston, J., Seawell, J., and Richards, J., concurred.

Langdon, J., concurred in the judgment.