[Civ. No. 8696.    First Appellate District, Division Two.—September 29, 1932.]

EDGAR S. ANDERSON, Petitioner, v. THE BOARD OF EDUCATION OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

Andrew F. Burke for Petitioner.

John J. O'Toole, City Attorney, and Walter A. Dold, Chief Deputy City Attorney, for Respondents.

Everett W. Mattoon, County Counsel (Los Angeles), as *Amicus Curiae* on Behalf of Respondents.

THE COURT.—Petitioner has been employed by respondents continuously since January 22, 1923, as a teacher in the day high schools of the city and county of San Francisco, and continuously since January 16, 1927, as principal of the Humboldt Evening High School. On May 4, 1932, respondent Board of Education passed a resolution purporting to dismiss petitioner from his employment as principal of the evening school, and this proceeding was instituted to compel the board to annul that resolution and to restore petitioner to his original status.

The distinction between this case and *Cullen* v. *Board of Education et al.*, *ante*, p. 510 [15 Pac. (2d) 227], is that here the petitioner, in addition to his work as classroom teacher in the day high school, also served as principal of the evening high school, whereas, in the Cullen case the petitioner served as a classroom teacher in both schools. The failure of respondents to argue this distinction in the original presentation of this case led us to believe that they did not rely upon it until their petition for a rehearing was filed. In all other respects the opinion in the Cullen case is determinative of the issues raised here. But it should be borne in mind that each case came to us upon a demurrer to a petition pleading facts applicable to teachers in the San Francisco schools only. Hence we do not discuss what might occur under some other state of facts.

The rights of this petitioner cannot be decided on the limited ground urged by respondents in the Cullen case but must be decided upon the broad ground whether any high

school principal in the San Francisco district is entitled to protection either under the State Tenure Law or under the municipal charter. In January, 1890, our Supreme Court interpreted the provisions of section 1793 of the Political Code as granting tenure after *election* to a principal of an elementary school. (*Kennedy* v. *Board of Education*, 82 Cal. 483 [22 Pac. 1042].) The provisions of that section relating to tenure of teachers had been added by amendment in 1881. The first freeholders' charter of the city and county of San Francisco, which became effective January 1, 1900, amplified the provisions of section 1793 and granted permanent tenure to all teachers of the city school district except those holding only special certificates and those serving a probationary term. Section 1793 remained without substantial amendment until repealed by the School Code in 1929. The charter section likewise stood until superseded by the new charter in 1931. During all this time the construction given section 1793 by the Supreme Court in the Kennedy case remained unchallenged.

As this section related only to those who held "city, or city and county" certificates, a state-wide teachers' tenure was provided in 1921 by amendment to section 1609 of the Political Code. Therein we find the first mention of principals in the limitation of the power of boards of education to dismiss "permanent teachers, principals, or supervisors of special subjects" except for cause and a public hearing. In *Bland* v. *Board of Trustees*, 67 Cal. App. 784, 791 [228 Pac. 395], the court of the Third Appellate District ruled that this section did not grant full tenure to a principal who was not a "teaching principal" as such principals could be elected for a definite period only. The ruling was based on the provisions of the section relating to the appointment and election of teachers as contrasted with those relating to principals. Thereafter the legislature amended the section (Stats. 1927, p. 1913) by striking out the references to teachers and inserting "persons in public school service requiring certification qualifications". By the same amendment the one-year limitation upon the election of principals was eliminated and the clause relating to dismissals was extended to include all "permanent employees in positions requiring certification qualifications". By subsection "E" of subdivision 3 of the amended section it was provided that "No person

employed in an administrative or supervisory position requiring certification qualifications shall be classified as a permanent employee other than as a classroom teacher.''

This limitation was carried into the School Code of 1929 (sec. 5.501) and so far has not been given judicial interpretation. The petitioner herein argues that the words ''administrative or supervisory position'' relate only to those positions in the executive branch as distinguished from those in the teaching branch. Respondents do not argue the point other than to say that the points of law involved in this case are the same as those in *Cullen* v. *Board, etc., supra.* That this is not so must be obvious as Cullen was a classroom teacher in both schools and the question of the rights of a principal was not properly raised in that case. For this reason we said in the Cullen case that it was unnecessary to decide whether the petitioner's rights were governed by the School Code or by the municipal charter as both statutes were identical in their application to the facts of that case. In this case we purposely refrain from determining the application of the School Code to the principals in districts outside of San Francisco and confine our judgment to the facts presented in the petition.

For the purpose of this decision only we may assume that the School Code does not cover principals generally and we hold that the rights of the petitioner in the instant case are governed by the San Francisco charter, and that the charter is a constitutional enactment in relation to this subject.

Section 135 of the charter (Stats. 1931, pp. 2973, 3057) provides that ''All teachers, heads of departments, vice-principals, principals, supervisors and directors shall be classified as permanent employees in their respective positions after they have been successfully employed in such positions in the school department for a probationary period of three years. In the absence of any action to the contrary by the board of education at the end of the third year of such employment, the classification shall be considered as permanent.'' Prior to the approval of this charter, section 5.405 of the School Code was enacted providing that ''Nothing in this Part shall be construed so as to repeal or negate any provisions concerning employees of school districts contained in the charter of any city, county, or city and county, heretofore or hereafter adopted and approved in conformity

with Article XI of the Constitution of this state." The charter was approved by the legislature on May 5, 1931. On June 9, 1931, the legislature enacted numerous amendments to the School Code including the following addition to section 5.502 heretofore quoted: "This section shall not apply to persons employed in administrative or supervisory positions in a district situated within, partly within, or conterminous with the boundaries of, a city or city and county where the charter, if any, of such city or city and county provides otherwise." Thus we find a clear legislative intention to permit municipal charters to regulate the tenure of certain employees of conterminous districts combined with a contemporaneous construction running over a period of time far in excess of that fixed for the determination of permanent tenure.

■ But respondents argue that these provisions of the charter are unconstitutional because the maintenance of the public schools is a "state affair" which cannot be governed by a local charter. They cite *Kennedy* v. *Miller,* 97 Cal. 429 [32 Pac. 558], and *Bruch* v. *Colombet,* 104 Cal. 347 [38 Pac. 45]. Neither case is helpful. Both hold that the Constitution contemplates a uniform system of public schools and that provisions of municipal charters in conflict therewith cannot stand. Respondents also cite *Esberg* v. *Badaracco,* 202 Cal. 110 [259 Pac. 730]. In that case the Supreme Court held that the provisions of the San Francisco charter relating to the levying of taxes for school purposes could not prevail over the general state laws covering the same matter because they were in direct conflict therewith. It should be noted, however, that the court said (p. 116) that the "charters may provide for matters not enumerated in the general laws and not in conflict therewith, including matters in furtherance of the purpose of the general laws of the state". This is the criterion upon which the question must be decided. If the charter provisions relating to the tenure of principals is in conflict with the general laws of the state, then, of course, those provisions may not prevail.

It is our conclusion that there is no conflict, but that the charter is "in furtherance of the purpose of the general laws of the state". The so-called State Tenure Law granted tenure during good behavior to all classroom teachers after a fixed period of service. It may have been contemplated

that in many of the smaller school districts it might not be practicable to place principals in this classification, but that, in the larger districts which were conterminous with the boundaries of chartered cities permanency in the employment of school principals would be desirable. But, whatever the purpose of the legislature may have been, it must be apparent that the charter provisions are not in conflict with, but are "in furtherance of the purpose" of the general Tenure Law. The latest expression of the Supreme Court upon this general subject is found in *Whitmore* v. *Brown*, 207 Cal. 473, 480 [279 Pac. 447, 450], where *Los Angeles School Dist.* v. *Longden*, 148 Cal. 380, 383 [83 Pac. 246], *Malaley* v. *City of Marysville*, 37 Cal. App. 638, 644 [174 Pac. 367], and *Esberg* v. *Badaracco*, 202 Cal. 110, 116 [259 Pac. 730], are cited in support of the statement that school matters may be made a municipal affair by the city "when acting in promotion and not in derogation of the legislative school plans and purposes of the state".

A slightly different line of reasoning brings us to the same conclusion that this charter provision is constitutional and controlling in this instance. When the charter was approved the code section limiting the appointment of principals to a period of one school year had been repealed. The School Code then, as now, read "Boards of school trustees, and city, and city and county boards of education shall have power and it shall be their duty to employ a principal for each school under their control." (Sec. 5.410, School Code.) Under section 5.500–2 these boards were required to classify as permanent employees those who had served the probationary period. If section 5.502 exempted principals from this classification it did so with the qualification that municipal charters might include them, and, if the general law did not grant them permanent tenure, it did not *limit* their term. Hence, in so far as principals in charter cities are concerned, it was competent for the city to make their tenure *a municipal affair* which the Supreme Court in the Whitmore case said could be done in those instances where the city is "acting in promotion and not in derogation of the legislative school plans and purposes of the state". The instant case is closely akin to *Malaley* v. *City of Marysville*, 37 Cal. App. 638, 644 [174

Pac. 367, 370], where the state school law provided that the board of education could appoint a city superintendent and fix his salary and the city charter provided that the county superintendent should be *ex-officio* city superintendent and for such services should receive a salary of $50 a month. In holding the charter provision effective the District Court said that the city may, if the legislature elects to give it the right to do so, "exercise precisely the same identical power with respect to matters connected with and calculated to further the interests of the public school system, *in so far as such city and school districts are concerned* . . . " The principle which we deduce from these cases is that matters of purely local concern, such as the appointment, assignment and removal of employees, may be exclusively regulated by general laws because the public school system is one of general as well as local concern, but that, when the legislature omits the full control over such local matters, it is competent for the city to make that a matter of "municipal affair". Then the validity of the charter regulation is to be determined upon an examination whether it is "in furtherance and not in derogation of the general school system".

Our conclusion is that section 135 of the San Francisco charter is wholly consistent with and in nowise in derogation of the general purposes of the State Tenure Law and that, in adding principals and vice-principals to those who are protected from dismissal without cause the city has merely furthered the general purposes of the state act (or clarified that act, as the case may be) without taking anything away from its principles or purposes.

In this connection we should add that we are not impressed with respondents' insistent argument that our judgment grants *double* tenure to these teachers and principals. Bearing in mind that for more than forty years the rule of the Kennedy case that they are *employees* and not officers has stood unchallenged we must interpret the word "position", as used in the school law and in the charter, as applying to the "employment" of the individual. If they were officers the term "position" would be interpreted with greater strictness as to the term, duties and place of employment. But, generally speaking, these factors do not control the relation of master and servant, or employer

and employee. The latter may be assigned to such duties within his employment as the employer may designate. Here the employer assigned the employee to teach in two separate school buildings and permitted him to continue in that *service* beyond the probationary period and to become classified as a permanent employee—not for a part of the service only—but for all. The tenure, therefore, runs to a position of employment, *or service,* of equal grade and rank to that to which the statutory classification has applied, and such is the settled rule of the Kennedy case.

It follows that, when respondents removed the petitioner from his position of principal of the evening school without cause and without a trial, they acted without right or power.

Let a peremptory writ issue in accordance herewith.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 29, 1932, and the opinion was modified to read as above; and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 28, 1932, and the following opinion then rendered thereon:

THE COURT.—The petition for hearing is denied.

In denying a hearing, however, we withhold approval from that portion of the opinion of the District Court of Appeal which holds that the two employments of petitioner constitute but one position.