[Civ. No. 17177. First Dist., Div. Two. May 28, 1956.]

BERKELEY UNIFIED SCHOOL DISTRICT OF ALA-MEDA COUNTY, Petitioner, v. CITY OF BERKELEY et al., Respondents.

J. F. Coakley, District Attorney, R. Robert Hunter, Chief Assistant District Attorney, Frank D. Parker and Agnes R. Polsdorfer, Assistant District Attorneys, Richard J. Moore and Marjorie Nowell, Deputy District Attorneys, for Petitioner.

Fred C. Hutchinson, City Attorney, and Robert T. Anderson, Assistant City Attorney, for Respondents.

DEVINE, J. pro tem.*—We have before us an original process, the petition of Berkeley Unified School District of Alameda County for a writ of mandate to compel the city of Berkeley and the members of the city council thereof, to levy a tax for school purposes, and to compel the auditor of the city, Mabel W. Jensen, to deliver to the county treasurer for the use of the schools certain tax moneys heretofore collected. The law under which the writ is sought is section 57 of the charter of the city of Berkeley. That section provides that, if requested by resolution of the board of education, it shall be mandatory for the council to assess and to collect an annual tax for school purposes in such amount as the board of education shall request, but not in excess of 35 cents per one hundred dollars assessed valuation of property within the city, and that the proceeds shall be deposited with the county treasurer.

The petition alleges that request was made by the board of education to levy a tax amounting to 35 cents per hundred dollars for the fiscal year 1955-1956 for school purposes, and that the city council refused to do so, and that it will continue to refuse to levy any tax provided for in section 57 of the charter. The petition also alleges that request was made pursuant to said section 57, by the board of education for the fiscal year 1954-1955, for a levy that did not exceed the limitation; that the levy was made and that the sum of $515,000 was collected, all of which was turned over to the

*Assigned by Chairman of Judicial Council.

county treasurer except the sum of $38,823.62, which sum the city auditor is withholding under a claim that section 57 of the charter is invalid.

The first question before us is that of the propriety of the writ of mandate as a remedy, assuming that section 57 of the charter is valid, and this question to be considered, first, as to the alleged expected refusal to levy the tax and, second, as to the refusal of the auditor to turn over the withheld amount.

No relief is sought by petitioner for the refusal of the city council to levy the tax for the year 1955-1956, the board of education being content to resort to funds otherwise provided for that year, and the allegation of that refusal has been made as a basis for the allegation that the city council will continue to refuse to make the levy. Respondents have met the petition, so far as the propriety of the writ as to future levies is concerned, with a demurrer, in which they raise the point that it is not alleged that a request for a levy has been made for any coming year and, of course, no allegation of a refusal. Also they have filed an answer in which in addition to a denial that request or refusal has occurred for any year subsequent to 1955-1956, it is alleged that on June 5, 1956, the voters of the city of Berkeley will have before them two propositions for increasing the maximum tax rate within the school district (presumably under Ed. Code, § 6358), and that if either of said propositions carries, petitioner will not need tax money to be levied under section 57 of the charter.

The writ of mandate does not lie to direct the performance of an act because of a merely anticipated demand and refusal. (*George* v. *Beaty,* 85 Cal.App. 525, 531 [260 P. 386]; *Friedland* v. *Superior Court,* 67 Cal.App.2d 619, 628 [155 P.2d 90]; *Palmer* v. *Fox,* 118 Cal.App.2d 453, 455 [258 P.2d 30].) Under extraordinary circumstances an actual refusal may be excused when the attitude of respondent shows that if a demand were made, it would be refused (*Jensen* v. *McCullough,* 94 Cal.App. 382, 389 [271 P. 568]), and possibly we could infer that if a request were made under section 57, it would be refused. However, when we came to the question whether or not a request actually will be made, we are met with uncertainty.

We cannot know whether a request for a tax levy will be made for 1956-1957 by the board of education, because the request, we may assume, would be made only after conscien-

tious study of the needs of the schools, the board considering the resources at its disposal, at least some of which, in view of the approaching election, are quite uncertain. ▮ Courts will not issue mandamus to become effective only if a board acts in a certain way. (*McGinnis* v. *Mayor & Common Council of San Jose*, 153 Cal. 711, 715 [96 P. 367].) We shall not command respondent city councilors to perform that which under eventualities they may never be obliged by law to do.

In any case, because we do pass on the question of the validity of section 57 of the charter, later in this opinion, and because that question is the only source of doubt of respondents as to their duties, there is ample declaration of the rights and duties of the parties to guide their future actions.

▮ There is no denial by respondent city auditor that she withholds, against petitioner's demand, funds collected under section 57 and that she bases the withholding upon asserted invalidity of that section. However, it is argued by respondents that the remedy of the writ of mandate is unavailable to petitioner because there is a plain, speedy and adequate remedy at law, namely, a simple action for money.

▮ Mandamus may be issued to a board or person to compel the performance of an act which the law specially enjoins as a duty resulting from an office. (Code Civ. Proc., § 1085.) ▮ It is a proper office of the writ to force a particular action by an officer when the law clearly establishes petitioner's right to such action (*Inglin* v. *Hoppin*, 156 Cal. 483, 491 [105 P. 582]) and, in particular, to compel an act to be done by an officer who refuses to perform because of an erroneous conception of his duties. (*Consolidated Printing & Publishing Co.* v. *Allen*, 18 Cal.2d 63, 66 [112 P.2d 884].) It has been pointed out that mandamus against a public officer is a more adequate remedy than declaratory relief, because it commands performance, while a declaratory judgment simply pronounces the duty to perform them. (*Leahey* v. *Department of Water & Power of the City of Los Angeles*, 76 Cal.App.2d 281, 285 [173 P.2d 69].) As compared with an action at law for money, the writ of mandate not only better comports with the dignity of public officials who stand by their duties as they see them, but also carries through to conclusion by directing issuance of a warrant (*Goldsmith* v. *Board of Education*, 63 Cal.App. 141, 146 [218 P. 296]), while a judgment at law, even when final,

with its auxiliary, the issuance of a writ of execution, might well be inadequate and certainly would be inappropriate. ■ We conclude that if the city auditor is withholding the funds erroneously, the writ of mandate is the appropriate remedy.

This brings us to the question of substantive law, whether or not section 57 of the charter of the City of Berkeley is valid. The section is perfectly clear and neither side disputes its meaning. If it is valid, the levy requested by petitioner, not in excess of the $.35 limitation, must be made. The first contention of respondents which we shall consider is, that the general laws of the state provide for the levying of taxes for school districts, and neither by these laws nor by the Constitution of the state is the board of education given the right to require the imposition of a city tax for school purposes as distinguished from a school district tax. The statutes of the state do not expressly give such right, nor do they forbid it. However, section 2201 of the Education Code states that the powers and duties of boards of education in cities are as prescribed in the laws governing the respective cities; and the law governing the city of Berkeley municipal affairs is its charter. The Constitution does not expressly give the power of taxation to city boards of education but it does allow a chartered city complete authority in municipal affairs (Cal. Const., art. XI, § 8). ■ Although education in general is a state affair, it may be made a municipal affair in part when the city acts in promotion and not in derogation of the purposes of the state. This proposition was firmly established in *Whitmore* v. *Brown,* 207 Cal. 473, 480 [279 P. 447]. ■ The court in that case distinguished (at p. 481) between taxes of the school districts and city taxes for the benefit of the schools. As to the former, the state law governs; but as to the latter, a chartered city is free to act in furtherance of the policy of the state in favor of diffusion of knowledge and intelligence (Cal. Const., art. IX, § 1).
■ Thus, the sections of 6357 to 6361, inclusive, of the Education Code, which are cited by respondents, do not operate to appropriate the entire field of taxation for the schools to the state and thus to exclude chartered cities from providing a more generous support to education.

The next contention of respondent is that section 57 of the charter is invalid because it takes discretion in the matter from the city council. It is true that the section leaves no discretion in the matter to the council, but that does not

render the section invalid. In *Esberg* v. *Badaracco*, 202 Cal. 110, 121 [259 P. 730], the court found no constitutional inhibition against the conferring by statute of the power to determine the amount of school tax upon the board of education, with an absolute requirement on the board of supervisors of the city and county of San Francisco to levy the tax in that amount.

The case of *McCabe* v. *Carpenter*, 102 Cal. 469 [36 P. 836], cited by respondents, was authority only for the proposition that delegation of taxation power to an executive officer, the superintendent of schools, was unconstitutional, as was pointed out in the Esberg case, *supra*, at p. 121.

In the Esberg case, the statute upheld was section 1612a of the Political Code, as it then existed (substantially the same provisions presently are in sections 6353 and 6355 of the Education Code) and that section referred to school district taxes within a county or a city and county, as distinguished from a city tax. Also, section 1610a of the Political Code was passed pursuant to constitutional mandate. (Cal. Const., art. IX, § 6.) However, we believe that a city operating under a charter may decide for itself to vest the taxing authority in the board of education, either completely, or virtually, by denying discretion in the matter to the city council. At this point the distinction made in the Whitmore case, *supra,* comes into play again. Education, generally, is a state affair; but if a chartered city chooses to render financial assistance to education, that is a municipal affair; and, therefore, the choice of a plan of assistance, not in conflict with state statute, including the delegation of powers of government, as adopted by the voters in approving the charter provision, is within the powers of a chartered city.

In *Adams* v. *Wolff*, 84 Cal.App.2d 435 [190 P.2d 665], a charter provision was upheld which required the legislative body of San Francisco to fix the pay of certain employees at a rate determined by the civil service commission to be that existing for the same crafts in private employment, as obtained by collective bargaining, even despite general laws of the state forbidding collective bargaining. The city's legislative body was left with no discretion in the matter.

Respondent contends that the Adams case is distinguishable in that it did not deal with the taxing power and that it was concerned with a municipal affair, the fixing of salaries, and not a state affair, such as is education. As to the latter of these arguments the distinction in the Whitmore case, *supra,*

applies. It is true that the Adams case did not involve the taxing power, but it did recognize that it was wholly within the power of the electorate of a chartered city to compel the city's legislative body to adopt as a wage scale, rates agreed upon through collective bargaining by employers and unions entirely outside any governmental agency. These rates, of course, would be paid by taxes, so that, although the Adams case does not have to do directly with the taxing power, it does have to do with the incurring of municipal expenses and indirectly with taxes and it sustains a charter provision which takes discretion, in a matter otherwise of legislative nature, away from the legislative body.

Respondents cite the case of *Board of Education of Sacramento* v. *Board of Trustees*, 96 Cal. 42 [30 P. 838], decided in 1892, claiming that the case holds that an act (therein, the act incorporating the city), making it mandatory for a city council to levy a certain school tax, would be invalid. If it did so hold, no doubt it would have lost its effect by the Esberg ruling in 1927, but we find that the earlier case simply held that the act, as it then existed, did allow discretion as to school taxes to remain with the city council. The case involved a question of interpretation, not a question of validity, of the act of incorporation.

Next, it is contended by respondent that section 57 conflicts with other parts of the charter of the city of Berkeley. Section 49 of the charter gives power to the city council to levy taxes and section 38 vests the municipality's legislative power in the city council. Section 57 must be held to control over these upon the grounds, first, that section 57 was enacted later, and second, that a particular expression takes precedence over one that is general.

Sections 52, 53 and 54 of the charter have to do with the budgetary provisions of the charter. It is argued that the board of education is one of the city's boards, and that it must, as other boards are required to do under the budgetary provisions, submit its estimates to the city manager who will submit a tentative budget for the city council to consider and to act upon. Here, again, the section 57 must be held controlling as later and as specific. It is our conclusion that when the people of the city of Berkeley adopted section 57 in 1951, they intended it to set up an independent procedure for the board of education, so that its request for a tax levy would not be subject to the ordinary budgetary controls.

The annual tax levy is provided for in section 56 of the charter and refers only to taxation to raise amounts estimated to be required in the budget, but section 57 with its specific provision for the school tax levy which the section declares shall be "in addition to the tax for municipal purposes," is exclusive thereof.

The petition for a peremptory writ of mandate to the city council and the members thereof is denied, without prejudice, solely on the ground that no request for a tax levy for the fiscal year 1956-1957 has yet been made; section 57 of the charter of the city of Berkeley is declared constitutional and valid; and it is ordered that a peremptory writ issue directing Mabel W. Jensen, as auditor of the city of Berkeley, to issue her warrant on the city treasury of all funds remaining therein which have been realized from tax levies for school purposes pursuant to section 57 of the charter of the city of Berkeley, payable to the county treasurer of the county of Alameda.

Nourse, P. J., and Dooling, J., concurred.