[Civ. No. 36635. First Dist., Div. Four. May 13, 1976.]

SAN FRANCISCO COMMUNITY COLLEGE DISTRICT,
Plaintiff and Respondent, v.
CITY AND COUNTY OF SAN FRANCISCO et al.,
Defendants and Appellants.

388

## COUNSEL

Thomas M. O'Connor, City Attorney, Thomas A. Toomey and John J. Doherty, Deputy City Attorneys, for Defendants and Appellants.

Long & Levit, Bert W. Levit, Victor B. Levit and H. Paul Breslin for Plaintiff and Respondent.

## OPINION

**EMERSON, J.**\*—The City and County of San Francisco, its board of supervisors, mayor, and certain city officials (hereafter sometimes appellants) appeal from a judgment granting a peremptory writ of mandate and a permanent injunction as prayed for in a complaint filed by the San Francisco Community College District (hereafter respondent). The judgment required that the mayor and board of supervisors include in the city's tax ordinance for the fiscal year ending June 30, 1975, a provision for a levy of taxes at a rate sufficient to produce the amount of tax money sought by respondent for that fiscal year, and enjoined them from taking steps to produce a lesser amount.

The following facts are established by the pleadings and by stipulations made at trial: Within the time prescribed by law and pursuant to the requirements of Education Code section 20607,[1] respondent prepared and filed its budget for the fiscal year ending on June 30, 1975. Respondent sought the sum of $17,041,671 in district tax money as funds for that budget. A tax levy of $0.742132 on each $100 assessed valuation

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]Except where otherwise indicated, all further statutory references are to the Education Code.

of taxable property was required to produce the stated sum. On September 12, 1974, the board of supervisors adopted an ordinance providing for a tax levy at the necessary rate. That ordinance was vetoed by the mayor. Subsequently, the board of supervisors enacted a new ordinance establishing a tax rate of $0.553785.

Respondent's complaint was filed on October 8, 1974. The complaint alleged in substance that the board of supervisors was required by state law to set a tax rate sufficient to produce the amount of district tax money sought by respondent.

George Grubb, a budget analyst in the mayor's office, submitted an affidavit in which he stated, inter alia, that respondent's budgets for past years included substantial amounts of surplus and that the board of supervisors made a "legislative finding that the tax rate of $0.553785 would raise the amount of money required by [respondent] under the budget submitted to the Board. . . ." John Iwamoto, respondent's business manager, testified that the 1974-1975 budget included no planned surplus and that all funds sought, with the possible exception of an amount requested as an undistributed reserve to be used for contingencies, were intended to be spent during the school year on June 30, 1975.

At the end of the proceedings below, the trial court expressed the view that governing state law empowered respondent alone to set the tax rate necessary to satisfy its fiscal requirements and that the function of the board of supervisors and mayor was the ministerial one of levying the tax at the rate established by respondent. The court thereupon rendered the judgment referred to above.

The principal issue in this case is whether the county board of supervisors may levy a tax for the benefit of a community college district at a rate lower than that necessary to produce the full amount of tax money sought by the district in order to fund its annual budget.

The roles of the various agencies and officials involved in making budgets for school districts and administering school district taxes are defined in sections of the Education Code.[2] Section 20607 provides in

---

[2]The relevant statutes, or pertinent portions thereof, are set forth in the appendix.

part that the governing board of a school district shall adopt and file its budget with the county superintendent of schools, the county board of supervisors, and other officials. Section 20701 provides that "[a]fter approving the budget of a school district, the county superintendent of schools shall determine the amount of money which must be provided by a school district tax." Section 20702 provides that the difference between the school district's estimated needs and its income, as determined by the county superintendent of schools, "shall be the minimum amount of the school district tax to be levied by the board of supervisors for the particular school district." Section 20703 provides that "[t]he board of supervisors shall fix such a rate for the district tax as will produce the amount of district tax money requested by the particular district." Section 20704, which describes the procedure to be followed by the board of supervisors in determining the tax rate, provides in part that "[t]he board of supervisors shall determine the rate of district tax necessary to be levied as follows: [¶] (a) They shall divide the amount of taxes as required to be raised by the unequalized value of the secured roll. . . . The rate shall be such as will produce the amount determined as necessary to be raised by taxation on the secured roll." Section 20705 provides that the board of supervisors shall annually "levy and cause to be collected a district tax for each school district whose budget shows a district tax to be necessary." Section 20706 provides that the necessary tax levy shall be made by the county auditor if the board of supervisors fails to do so.

The foregoing statutes regulate the processes of making budgets and levying taxes for the benefit of school districts. Appellants argue that the statutes are largely inapplicable to community college districts. They refer to section 1010.7, which appears in an article of the code relating exclusively to community college districts. That statute provides in part that "[t]he district governing board shall determine and control the district's operational and capital outlay budgets and shall present the budgets to *county authorities* for the purposes of establishing the district tax rates." (Italics added.) Appellants urge that this language directs the governing board to submit its budget directly to the board of supervisors and thus transfers to the latter the power vested in the county superintendent of schools in the case of other kinds of school districts to determine the amount of tax money required to be raised.

■ This argument is without merit. Other statutes suggest that a community college should be considered a school district within the

meaning of the foregoing statutes. (See §§ 41, 1010.) Further, the Legislature has enacted section 20614, which regulates the preparation of tentative budgets and the approval and adoption of final budgets for community college districts. (Stats. 1974, ch. 754, § 2.) That statute operates in substantially the same manner as does section 20607 with respect to school districts in general. Like the latter statute, section 20614 appears in a division of the code entitled "Local School District Financial Support and Management," and precedes the statutes previously reviewed which regulate the determination of tax levies required for school districts. Although the new statute, which became effective on January 1, 1975, is not directly applicable in the case at bench, its terms and statutory context make clear that the Legislature has not provided that the board of supervisors shall have a different role in the financing of community college districts than that which it plays in the financing of other kinds of school districts.

Beyond this, it should be noted that section 1010.7 is not inconsistent with the other statutes cited above. It states that the district governing board shall control the district's operational and capital outlay budgets. It further states that the governing board shall submit these budgets to "county authorities" for the purposes of establishing the district tax rates. There is no reason to suppose that the county superintendent of schools is not one of the "county authorities" mentioned in the statute. Moreover, section 1010.7 is preceded by section 1010, which states in part that "[t]his article shall be construed as an expression of the policy of the Legislature with regard to the functions of the above mentioned boards, but shall not be construed as an enactment of specific legal provisions. Nothing contained in this article shall supplant existing law." Therefore, the statutes previously reviewed, which govern budget-making and taxation for school districts, are applicable in the case at bench.

Those statutes create the following scheme: The governing board of the community college district prepares, adopts, and files its final budget; the county superintendent of schools determines how much district tax money will be required by the district in order to satisfy its needs under the budget; and the board of supervisors sets the tax rate accordingly. In particular, sections 20702 and 20703 make clear that the function of the board of supervisors in setting the tax rate is the purely ministerial one of setting a rate sufficient to produce the amount of tax

funds requested on behalf of the district. Contrary to appellants' suggestion, the statutes do not say that the board of supervisors is equipped with the power to set the tax rate according to its own discretion.

This conclusion is supported by the case of *Esberg* v. *Badaracco* (1927) 202 Cal. 110 [259 P. 730]. There a board of supervisors disallowed certain items included in a school district budget and set the tax rate accordingly. In holding that this practice was illegal, the *Esberg* court concluded that the board of education alone, and not the board of supervisors, was empowered to determine the amount of tax money required to be raised for school purposes. In so concluding, the court relied upon then Political Code section 1612a, which embodied the main elements of the statutory scheme outlined above. (See *Esberg* v. *Badaracco, supra,* 202 Cal. 110, 118-119.) Appellants argue that *Esberg* applies only where the board of supervisors attempts to delete particular items from a school district's budget. It is clear, however, that *Esberg* cannot be given such a narrow reading. The case establishes that the board of supervisors is merely the instrumentality through which school district taxes are to be levied and accordingly must raise the amount of tax money requested on the school district's behalf by school authorities. (*Esberg* v. *Badaracco, supra,* 202 Cal. 110, 118-123; see *Pasadena J. C. Dist.* v. *Board of Supervisors* (1932) 216 Cal. 61, 71 [13 P.2d 678]; *Johnson* v. *Board of Supervisors* (1929) 208 Cal. 282, 286 [281 P. 57].)

That appellants' position is erroneous is also shown by present and former provisions of the state Constitution. At the time the judgment in this case was entered, article IX, section 6 stated that the Legislature should provide for an annual tax levy by county authorities sufficient, within certain limits, to produce "such revenue for each school district as the governing board thereof shall determine is required in such fiscal year for the support of all schools and functions of said district. . . ." Article XIII, section 21 currently embodies this requirement in similar language. These constitutional provisions make clear that the statutes governing taxation for school purposes have the meaning suggested previously.

Appellants refer to cases which are said to support their theory that a board of supervisors may set the tax rate according to its own estimate of a community college district's needs. Some of these cases indicate that a

court may invalidate a tax levy as excessive when the taxing entity improperly neglects to consider factors making taxation at a lower rate appropriate. (*Otis* v. *Los Angeles County* (1937) 9 Cal.2d 366 [70 P.2d 633]; *Redman* v. *Warden* (1928) 92 Cal.App. 636 [268 P. 686]; *Madary* v. *City of Fresno* (1912) 20 Cal.App. 91 [128 P. 340].) These cases, however, discuss statutory schemes different from that under review in this case. Nor is appellants' position supported by *Berkeley Sch. Dist.* v. *City of Berkeley* (1956) 141 Cal.App.2d 841 [297 P.2d 710], where it was stated that a charter city may make the financing of education a "municipal affair" to the extent that the city "acts in promotion and not in derogation of the purposes of the state." (*Id.,* at p. 846.) The argument advanced by appellants, if sustained, would permit the board of supervisors to act in derogation of the procedures for effecting school district taxation established by the state.

Appellants also contend that the board of supervisors was entitled to investigate respondent's financial needs because the budget submitted by respondent was legally inadequate. The "budget" to which appellants refer is a four-page document appended to respondent's complaint. Appellants assert that that document fails to include certain matters required to be stated in a school district budget by applicable statutes. (§§ 20602-20603.)[3] As to that particular document, the assertion is true. It is further true that respondent's complaint alleged that the four-page document was the final budget and that the parties so stipulated.

On appeal, however, the parties have stipulated that the record on appeal be augmented to include a copy of a document entitled "California Community Colleges Annual Financial and Budget Report." That report meets the statutory requirements and is sufficient as a school district's final budget. We note further that the board of supervisors admits having received a copy of the latter document and that it was stipulated at trial that respondent's budget was prepared and filed within the time prescribed by law and in the manner prescribed by section 20607. The record does not indicate that the budget filed by respondent was inadequate.

The judgment is affirmed.

Caldecott, P. J., and Christian, J., concurred.

[3]As of January 1, 1975, the form and contents of budget reports for community college districts are governed by sections 20612 and 20613.

## APPENDIX

Section 20607 provides: "(a) On or before the first day in July in each year, each school district shall file a tentative budget with the county superintendent of schools. [¶] (b) On or before July 15, in each year, the county superintendent of schools: [¶] (1) Shall examine and may make technical corrections to the tentative budget, and indicate changes he deems desirable or necessary to determine the tax requirement: and [¶] (2) Shall make any recommendations he deems necessary to insure that the proposed expenditures do not exceed the anticipated revenues and that the anticipated revenues are realistic, and shall transmit to the governing board a written explanation of the reasons for such changes. [¶] (c) On or before July 20 in each year, the governing board shall make such changes in the tentative budget as it deems necessary or desirable and shall return the budget to the county superintendent of schools. Such budget shall constitute the publication budget for the period to which it is intended to apply. A copy of this publication school budget shall be sent to the county auditor in such form. [¶] (d) On or before the eighth day of August, or on or before the 10th day of August in the case of a school district in which there is an average daily attendance of more than 10,000, the governing board of each school district in which a public hearing is required in Section 20504 of this code shall adopt a final budget and shall file such budget with the county superintendent of schools, the county auditor, the county board of supervisors, and the Superintendent of Public Instruction. In the case of districts which are not required to hold a public hearing, the publication budget as approved by the governing board shall be filed with the county superintendent of schools, the county auditor, the county board of supervisors, and the Superintendent of Public Instruction immediately after its approval. [¶] (c) On or before the 15th day of August, the county superintendent shall approve the adopted budget for each school district as officially adopted and submitted by its governing board, and shall file one copy of the adopted budget of each school district with the board of supervisors, one copy with the auditor of his county, and one copy with the Superintendent of Public Instruction, together with a statement showing the amount of school district taxes required by each school district of the county."

Section 20701 provides: "After approving the budget of a school district, the county superintendent of schools shall determine the amount of money which must be provided by a school district tax."

Section 20702 provides: "He shall determine this amount by deducting from the total estimated needs of the school district as shown by its budget the total estimated income of the school district from all sources other than a school district tax for the current school year as estimated in the budget. The remainder, if any, shall be the minimum amount of the school district tax to be levied by the board of supervisors for the particular school district."

Section 20703 provides: "The board of supervisors shall fix such a rate for the district tax as will produce the amount of district tax money requested by the particular district."

Section 20704 provides, in pertinent part: "The board of supervisors shall determine the rate of district tax necessary to be levied as follows: [¶] (a) They shall divide the amount of taxes as required to be raised by the unequalized value of the secured roll, exclusive of the assessed valuation increment used to allocate tax receipts to a redevelopment agency pursuant to Article 6 (commencing with Section 33670) of Chapter 6 of Part 1 of Division 24 of the Health and Safety Code, of the last assessment roll of the district after due allowance for delinquencies. The rate shall be such as will produce the amount determined as necessary to be raised by taxation on the secured roll."

Section 20705 provides: "The board of supervisors of each county or city and county shall annually at the time and in the manner of levying county or city and county taxes

levy and cause to be collected a district tax for each school district whose budget shows a district tax to be necessary."

Section 20706 provides: "If the board of supervisors refuses or neglects to make the tax levy pursuant to Sections 20701 to 20804, inclusive, and Sections 20901 and 21001, the levy shall be made by the county auditor."

Section 1010.7 provides: "The district governing board shall determine and control the district's operational and capital outlay budgets and shall present the budgets to county authorities for the purposes of establishing the district tax rates. The district governing board shall determine the need for elections for override tax levies and bond measures and to request that such elections are called."