(26 Misc. Rep. 735.)

### McCLOSKEY v. THOMPSON.

(Supreme Court, Appellate Term.   March 24, 1899.)

BROKERS—COMMISSIONS.

A real-estate agent showed a prospective tenant a store, gave him the price, and, on being made a lower offer, said he would find out.   He gave the tenant an order for the key, who said he would be back shortly, but instead he went to another agent, and negotiated a lease of the same store through him.   *Held,* that the first agent was not entitled to the commission.

Appeal from municipal court, borough of Manhattan, Eighth district.

Action by James A. McCloskey against Albert L. Thompson. There was a judgment for plaintiff, and defendant appeals.   Reversed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVENTRITT, JJ.

George W. Albright, for appellant.
James C. Quinn, for respondent.

MacLEAN, J.   In his verified complaint, the plaintiff alleged that he had been employed by the defendant, the owner of the premises

488 Eighth avenue, in the city of New York, to procure for him a customer to rent the premises, and that defendant had agreed to pay the plaintiff therefor the usual commission of $2\frac{1}{2}$ per cent. on the first year's rental, and 1 per cent. on each of the following years; and that, in pursuance of said agreement, the plaintiff procured a customer, who hired said premises "at about the rent of $2,500 per annum for the term of five or more years, as plaintiff is informed and believes." On the trial, the plaintiff testified that he had an understanding with the defendant that, if he procured a customer, he should get a commission the same as anybody else. That he saw Mr. Hillebrandt, who afterwards became the tenant, and showed him the store. Mr. Hillebrandt asked the rent, and plaintiff told him $1,800. Hillebrandt said it was too much, and Hillebrandt made an offer of $1,500, and went out, saying he would be back in a couple of hours; receiving from the plaintiff a card to get the key from the woman who kept it. The plaintiff went to see the landlord, and found him absent, but in passing the store he saw on the premises the landlord, Mr. Hillebrandt, and another real-estate agent. Then the plaintiff told the landlord that Hillebrandt was his party, but the landlord said, "Mr. Mead brought this man into the place," to which the plaintiff claims he replied, "He made an offer of $1,500, and I expect my commission if he takes the place." The next morning he saw the bills down. A couple of days afterwards he called upon the landlord about his commission, but was told that those people (Mead & Co.) rented the place and deducted the commission. It appeared that the bills of several brokers were upon the house, and the woman who kept the key said she had received it from Mr. Thompson, not Mr. McCloskey, and that she would let any real-estate agent who had a bill on the house have the key. Mr. Hillebrandt, who was called for the plaintiff, testified that, when he asked McCloskey the price, he was told "they were getting eighteen or twenty hundred dollars for it"; and McCloskey said he did not know what they would like to have, and asked for an offer; and that he (Hillebrandt) then said, "I think fifteen hundred dollars is plenty for it." That plaintiff said he would find out, and left. That he saw there were half a dozen different agents posted up. That he went to another agent, and he did not know the price. Then he went to see Mr. Mead. Mr. Van Riper, partner with Mead, who knew the price, stated that it was $1,500, and that he could not get it any cheaper. That he had no more talk with Mr. McCloskey in reference to the premises, and that Mr. McCloskey had not mentioned any specific figure, but that Mr. Van Riper stated the price,— he stated the terms upon which he could have it,—and that he then made a deposit on it of $100; and that he (Hillebrandt), Mr. Thompson, and Mr. David Van Riper agreed upon a lease of the store. Even if similar statements of the plaintiff had not been contradicted, as they were, by the defendant, by the tenant, and by the agent through whom the lease was procured, and who deducted the commission, there was no evidence in the case upon which the judgment in favor of the plaintiff could be supported. To entitle him to a commission, it is necessary that a broker should earn it by effecting the bargain which his employer has asked him to make, and unless he effect this,

however strenuous may have been his efforts, he has no claim to reward. Upon this view of the case, it is hardly necessary to advert to the fact that the amount stated in the judgment is based upon the plaintiff's alleged information and belief, as stated in the complaint, and not upon the amount proven upon the trial. The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.

Judgments reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, LEVENTRITT, J., in result.