# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA

---

ESTERLY-HOPPIN COMPANY v. FITZHUGH BURNS.[1]

November 24, 1916.

Nos. 19,949—(85).

**Broker — verdict sustained by evidence.**

1. Defendant is a broker in liability insurance and surety bonds. Both defendant and another broker, as subagents of plaintiff, were endeavoring to procure a policy of liability insurance from one Olson. It was in fact procured by one of them and was written by plaintiff. Both brokers claimed the whole commission. The jury found that defendant procured the insurance and was entitled to the commission. There is evidence to sustain such a finding.

**Charge to jury erroneous.**

2. The trial court, after first instructing the jury generally that before an insurance broker can recover a commission he must prove that he was the procuring cause which resulted in the writing of the insurance, then instructed them that if defendant found Olson as a customer and opened negotiations for insurance and did not abandon such negotiations, then he procured the insurance and was entitled to the commission. This instruction was erroneous.

**Which of two brokers entitled to commission.**

3. Where two brokers are competing to secure the same customer for the same principal, the one through whose efforts the business is secured is entitled to the commission, though he was not the first to

[1]Reported in 159 N. W. 1069.

135 M—1

solicit the customer, and though the one who first did so has not
abandoned the quest.

**Error in charge prejudicial.**

4. The error mentioned was not cured by other portions of the charge,
and was not one of the character which counsel was obliged to call to
the attention of the court at the trial.

Action in the district court for Ramsey county to recover $362.89
unpaid premiums upon certain policies of insurance. Defendant inter-
posed a counterclaim for $2,000, the amount of commission due as broker
for securing a certain indemnity policy for $10,000. The case was tried
before Olin B. Lewis, J., and a jury which returned a verdict in favor
of defendant for $753.87. From an order denying its motion for a new
trial, plaintiff appealed. Reversed and new trial granted.

*Barrows, Stewart & Ordway,* for appellant.

*Morphy, Bradford & Cummins,* for respondent.

HALLAM, J.

In 1910, O. H. Olson obtained a contract to build the Minnesota state
prison. It was necessary that he give a surety bond, and he also expected
to secure liability insurance. Plaintiff was a brokerage agency in Minne-
apolis, engaged in writing both liability insurance and surety bonds.
Defendant and Walter T. Lemon were both brokers in St. Paul. Each
represented one or more companies as agent, and also acted in some mat-
ters as subagent for plaintiff. Both Lemon and defendant were com-
peting for Olson's bond business. In March, 1910, defendant solicited
also his liability insurance for the Maryland Casualty Company, and,
believing that Olson would accept the same, had plaintiff write a policy
which he delivered to Olson. Olson declined to receive it, stating that he
was not ready to take liability insurance. Defendant returned the policy
to plaintiff with explanations, and plaintiff acknowledged receipt with
a letter "trusting that this matter does not get out of your hands, and
that we may receive application for rewriting policy in the near future."
Defendant "kept after the business."

About May, 1910, the Maryland Company commenced writing surety
bonds and Lemon became its general agent for that purpose, plaintiff re-
maining its general agent for liability insurance. Lemon then proceeded

to solicit Olson's bond for the Maryland Company, and he secured part of the bond. Plaintiff claims that Lemon solicited the liability insurance also for the Maryland Company, and secured Olson's consent to accept it. Defendant secured part of the bond for another company. He claims that it was he that finally procured Olson's consent to place the liability insurance with the Maryland Company. The liability insurance was secured. The policy was issued by plaintiff and delivered to defendant for delivery to Olson, and was so delivered, and Olson accepted it. All parties acted in good faith throughout, but after the transaction was over they disagreed as to their rights. Defendant and Lemon both claimed from plaintiff the subagent's commission for procuring the liability policy. Plaintiff at first refused to pay to either until the conflicting claims could be settled. Later plaintiff, regarding Lemon as entitled to the commission, credited his account with the amount of it. Defendant, also claiming the commission, retained some small amount due from himself to plaintiff to apply thereon. Plaintiff sued him for this amount, and defendant counterclaimed for the amount of the commission. The jury found for defendant and plaintiff appeals.

Plaintiff makes two contentions: First, that the evidence does not sustain the verdict; and, second, that the court erred in the charge to the jury.

1. The first contention cannot be sustained. There was some conflict in the testimony. There was evidence from which the jury might find that defendant in fact procured the policy and was entitled to the commission.

2. The exception to the charge presents a more serious question. The court properly gave the general instruction that, before an insurance broker can recover a commission, he must prove that he was "the procuring cause of the transaction which resulted in the writing of the policy." But in applying the general principle to the facts of this case the court said: "If * * * you find that defendant Burns found Olson as a customer for liability insurance and began negotiations with him therefor, and that thereafter either the plaintiff or Lemon closed these negotiations without the aid of Burns, then the commission belongs to Burns, even though he did not close the transaction, and your verdict would be for the defendant for the reason that under those circumstances you would necessarily find

that Burns had brought Olson and the plaintiff together, and that he in fact had procured the insurance to be written," and he closed this subject with the statement that "if Burns found Olson as such customer for insurance and opened the negotiations therefor and did not abandon such negotiations, then Burns would be entitled to his commission."

This virtually amounted to a direction to find a verdict in favor of defendant, for it was undisputed that defendant did open negotiations with Olson, and that he never abandoned the quest for this business. But this was not enough. A broker may do all this and yet he may not be able to close the transaction, while another may be able to do so. In other words, though defendant kept after the business and tried to get it, it might be that Lemon in fact procured it, and the evidence was such that the jury might so find. Even though they did find that Lemon was the procuring cause, they would still, under the charge of the court, be obliged to find for defendant. This instruction was erroneous.

3. To the broker, reward comes only with success. When two brokers are in quest of the same business for the same principal, the one whose efforts secure the business is entitled to the commission for securing it, although he may or may not be the first who solicited the customer, and even though the one who was first has not abandoned the quest. Scott v. Lloyd, 19 Colo. 401, 35 Pac. 733; Bowser v. Mick, 29 Ind. App. 49, 62 N. E. 513; Votaw v. McKeever, 76 Kan. 870, 92 Pac. 1120; Higgins v. Miller, 109 Ky. 209, 58 S. W. 580; Ward v. Fletcher, 124 Mass. 224; Whitcomb v. Bacon, 170 Mass. 479, 49 N. E. 742, 64 Am. St. 317; Vreeland v. Vetterlein, 33 N. J. Law, 247; Baker v. Thomas, 12 Misc. 432, 33 N. Y. Supp. 613; McCloskey v. Thompson, 26 Misc. 735, 56 N. Y. Supp. 1076; see notes in 23 L.R.A. (N.S.) 164, and 44 L.R.A. 337.

4. Counsel for defendant, perhaps not disputing the foregoing, contend that the charge taken as a whole properly submitted the case, that the instructions excepted to, taken in connection with the rest of the charge, could not have misled the jury, and that the error complained of, not having been excepted to at the trial, is now waived.

Prior to 1901 it was the law in this state that exceptions to the charge of the court should be taken at the trial, and that a party who sits by and permits the court to charge the jury without objection or exception on his part could not thereafter be heard to assert that the charge was er-

roneous. Barker v. Todd, 37 Minn. 370, 34 N. W. 895; Bergh v. Sloan, 53 Minn. 116, 54 N. W. 943; Valerius v. Richard, 57 Minn. 443, 59 N. W. 534. But in 1901 the legislature in its wisdom changed this rule, and provided that, in order to obtain a review of an instruction, it shall not be necessary to take an exception at the trial, but that the aggrieved party may specify the alleged error in his notice of motion for a new trial. Chapter 113, p. 121, Laws 1901 (G. S. 1913, § 7830). The operation of this unfortunate legislation has been restricted as much as rules of construction legitimately permit. It has been held that where the charge as a whole is substantially correct, but is in some particulars indefinite, inconsistent or verbally inaccurate, containing inadvertent misstatements of fact or technical inaccuracy as to matters of law, defects in short which it is fair to assume the court would correct if attention were called to them, counsel objecting must call such defects to the attention of the court on the trial or they are held to be waived. Steinbauer v. Stone, 85 Minn. 273, 274, 88 N. W. 754. But exception need not be taken at the time to an instruction which virtually withdraws from the jury a question in issue (Robertson v. Burton, 88 Minn. 151, 92 N. W. 538); nor to an erroneous instruction on a "controlling proposition of law." Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754.

The erroneous statement here is of the latter character. It is not cured by other portions of the charge. It is a case of a correct statement of a general principle involved, followed by an incorrect application of that principle to the facts in issue. The jury are much more likely to heed the latter than the former.

Judgment reversed.