MOREHEAD *v.* REEM.

1. INSURANCE—AGENTS AND BROKERS—RIGHT TO COMMISSIONS AFTER TERMINATION OF CONTRACT.

   Where insurance agent's contract with branch manager of life insurance company was terminated, and he thereafter ceased to represent said company, he would not be entitled to compensation by way of commissions on a policy subsequently written by it even though it appeared he was the efficient means of consummating the bargain.

2. SAME—PROCURING CAUSE.

   Where, at time insurance agent's contract was terminated, prospect on which he had been working had made no application for insurance, but later made application and policy was written, said agent was not agent of company at time policy was written, did not produce the business, and therefore he was not entitled to commissions thereon, as against the company.

3. SAME—AGREEMENT BETWEEN AGENTS.

   Agreement between life insurance agents as to division between them of commissions to be paid on prospective business, not consented to by the branch manager under whom they worked, would have no binding effect on him.

4. SAME—FRAUDS, STATUTE OF.

   Such contract, to be effective, must, under the statutes, be in writing and signed by the party to be charged, and be based on a valuable consideration.

5. SAME—RELEASE—AGENT BARRED BY RELEASE FROM RECOVERING COMMISSIONS.

   Where insurance agent, after termination of his contract, in writing released his right to all future commissions, including certain prospect on which he and another agent had been working, he is barred from recovering from said other agent or the branch manager a percentage of commissions paid on a policy thereafter issued to said prospect.

Effect of termination of agency as affecting insurance agent's right to commissions on renewals, see annotation in 35 L. R. A. (N. S.) 153.

Error to Wayne; Warner (Glenn A.), J., presiding. Submitted April 21, 1931. (Docket No. 10, Calendar No. 35,492.) Decided June 1, 1931. Rehearing denied September 10, 1931.

Assumpsit by Orda H. Morehead against Guy A. Reem and another for commissions on certain life insurance policies. Judgment for plaintiff. Defendants bring error. Reversed.

*Harry J. Lippman,* for plaintiff.

*Max Kahn* (*Leonard V. Pylkas* and *Ned E. Mellen,* of counsel), for defendants.

Potter, J. Plaintiff sued defendants to recover commissions claimed to be due him on life insurance policies written on the life of Charles S. Mott of Detroit, Michigan. Plaintiff entered into a contract with the Detroit branch manager of the Canada Life Assurance Company at Detroit, Michigan, July 30, 1924, to take effect August 1, 1924, whereby plaintiff was to act as a life insurance agent. Plaintiff's contract with the Detroit manager of the Canada Life Assurance Company provided that:

"During the continuance of this contract renewal commissions shall be allowed the agent on the renewal premiums. * * * Either party hereto may terminate this agreement by giving to the other ten days' notice in writing to that effect."

In the fall of 1925 defendant Galbraith made contact with Mr. Charles S. Mott and Mr. Mott became interested in the Canada Life Assurance Company, and, it is possible, what plaintiff did in connection with Mr. Mott's interest had something to do with what Mott eventually did in applying for insurance. Plaintiff and defendant Galbraith were working together. They thought they might procure a policy

from Mr. Mott, and October 15, 1925, defendant Galbraith wrote plaintiff:

"I wish to acknowledge your participation in the Mott case to the extent of 62½ per cent. of all commissions payable to me, either now or hereafter, on said case."

This arrangement related to the division of commissions between defendant Galbraith and plaintiff. On January 8, 1926, plaintiff and defendant Galbraith had concluded to sever their working arrangements and plaintiff to surrender his agency with the Canada Life Assurance Company. On that date, January 8, 1926, Galbraith wrote a letter to the manager of the Canada Life Assurance Company at Detroit furnishing a copy thereof to plaintiff, which letter stated:

"It is my understanding that any business written on the life of Mr. C. S. Mott, by yourself or Mr. Morehead or myself, shall be divided as follows: Guy A. Reem—50%; A. L. Galbraith—33⅓%; O. H. Morehead—16⅔%. Will you kindly verify and acknowledge the above."

It does not appear that defendant Reem, who was then manager of the Canada Life Assurance Company at Detroit, ever acknowledged the receipt of this letter or made any written agreement as to what the basis of division of commission might be. No commission was due at that time. Defendant Galbraith and plaintiff were only speculating on a division of what the future might bring forth.

March 4, 1926, plaintiff left the employ of the Canada Life Assurance Company.

March 27, 1926, defendant Reem wrote plaintiff:

"This letter will serve as acceptance for your resignation, tendered to become effective March 8,

1926, thereby canceling your contract with the Canada Life Assurance Company dated July 30, 1924."

March 31, 1926, plaintiff wrote to defendant Reem:

"In view of the fact that I have severed my connections with the Canada Life Assurance Company, I beg to advise you that the understanding and arrangement outlined in my letter to you of January 8, 1926, copy of which I sent to Mr. A. L. Galbraith, between Mr. Galbraith and myself, is hereby terminated and canceled.

"I release, in its entirety, any future interest I may have in all of the following cases" naming them, and including that of C. S. Mott.

Defendants claim, by reason of plaintiff having terminated his contractual relations with the Canada Life Assurance Company, he has no right to commissions on business applied for and written thereafter, and plaintiff's right to commissions on renewals ceased.

"The rights of the respective parties here are to be determined by reference to the contract which they adopted to fix and regulate them. This would be so in any case of a contract fixing and defining the rights of the parties thereto." *Scott* v. *Travellers' Ins. Co.*, 103 Md. 69 (63 Atl. 377, 7 Ann. Cas. 1166).

"The right to compensation is associated with a continuance of services, and the compensation is the agreed measure of their value. When the policy first issues, the per centum specified becomes due, and on each renewal the reduced per centum is allowed. Very manifestly the scope of the agreement conferring the authority is to provide the measure of remuneration for what the agent may do while he remains such, and no further. He was not to be paid for renewals afterwards made, unless participated in by him while in possession of authority to renew.

Although renewals are the consequence of the original contract of insurance, and in this particular beneficial to the company, yet the full compensation given and accepted for this service is the twenty-five per centum on the sum received, provided in the contract which creates the agency and regulates its terms." *North Carolina State Life Ins. Co.* v. *Williams*, 91 N. C. 69 (49 Am. Rep. 637).

"The agent having the right to receive commissions only so long as the contract continued in force and it having been annulled was without right to any commissions on renewal premiums, after the date of the termination of his contract of agency." *Security Life Ins. Co. of America* v. *McCray*, 124 Ark. 202 (186 S. W. 819).

"The authorities are overwhelming that such provisions, standing alone, deprive an agent of any right to commissions on renewal premiums paid after the termination of his agency." *Fidelity & Deposit Co.* v. *Washington Life Ins. Co.*, 193 Fed. 512.

"It is now well settled by the great weight of authority that stipulations in contracts of insurance agency similar to those in the contracts sued upon deprive the agent of any right to commission on renewal premiums paid after the termination of his agency. Such was the holding in *Fidelity & Deposit Co.* v. *Washington Life Ins. Co.*, 193 Fed. 512, cited in our original opinion, which gives quite a full citation of the authorities upon that question up to that time. The cases upon this subject are digested in a note under *Walker* v. *Insurance Co.*, 80 N. J. Law, 342 (79 Atl. 354, 35 L. R. A. [N. S.] 153, Ann. Cas. 1912 A, 526), and in the recent case of *Locher* v. *Insurance Co.*, 200 Mo. App. 659 (208 S. W. 862). Also see the following texts: 16 A. & E. Enc. of Law (2d Ed.), p. 919; 22 Cyc. p. 1441; 14 R. C. L. p. 869." *American Nat'l Ins. Co.* v. *Teague* (Tex. Civ. App.), 239 S. W. 604.

It is apparent the contact between the Canada Life Assurance Company and Mr. Mott, when first made, was made through the defendant Galbraith, but neither plaintiff nor Galbraith were able to procure an application from Mr. Mott or deliver to him an acceptable policy. Plaintiff left the Canada Life Assurance Company March 4, 1926. He ceased to represent the company thereafter. He would not be entitled to compensation from the insurance company by way of commissions on a policy subsequently written by it, even though it appeared he was the efficient means of consummating the bargain. It did not so appear in this case. Ordinarily a principal pays an agent for results, not attempts; for business, not prospects. At no time during the plaintiff's employment by the insurance company was Mr. Mott ready and willing to take insurance. He did, after plaintiff left the employ of the company, make an application through defendant Reem in March, 1926, for a policy of insurance. The insurance company refused to issue a policy at the usual and ordinary rate, but insisted upon charging a higher or raised rate on the policy of $210,000. Mr. Mott refused to accept the policy or to pay the raised rate thereon. Subsequently, through defendant Reem and others, a new arrangement was made whereby the Canada Life Assurance Company wrote a policy of $50,000 on Mr. Mott at its standard or ordinary rates. Another $150,000 was placed in the New England Mutual Life Insurance Company and the Equitable Life Assurance Company of New York, and Mr. Reem received a commission thereon and divided it with defendant Galbraith and Mrs. Howland, who had assisted in some statistical work done in procuring the Mott application. We must hold that plaintiff, at the time the application was

procured and the policy written, was not the agent of the company. He did not produce the business. Mr. Mott, conceding his ability to take the policy at any time, was never ready or willing to do so upon any terms and conditions agreed upon between the plaintiff and Mr. Mott or between the Canada Life Assurance Company and Mr. Mott. The Canada Life Assurance Company never accepted Mr. Mott's application as made, nor did it issue a policy thereon acceptable by him as applied for. There was no liability to plaintiff by the Canada Life Assurance Company, not only because of the termination of the contract of agency, but because he did not consummate or close a deal with Mr. Mott. The question, then, is whether there is any liability to plaintiff from defendants. If so, such liability must rest on contract, which must, under the statutes in force, be in writing and signed by the party to be charged, and it must likewise be based upon a valuable consideration. Whatever defendant Galbraith's arrangements with plaintiff may have been, it does not appear that Mr. Reem ever signed anything whereby he acknowledged any indebtedness to plaintiff. It is true Galbraith and plaintiff, as between themselves, sought, long before Mr. Mott made application for insurance, to divide the prospective profits on profitable business, the acquiring of which depended upon contingencies which might or might not ultimately happen.

It does not appear that Reem participated in this division by plaintiff and Galbraith of elusive profits, or agreed to pay percentages of commissions on the basis thereof or upon any other basis than plaintiff's agency contract with the Canada Life Assurance Company with which he had severed connection before the application was made. Plaintiff was

leaving the company, dissolving any business relations he had with it. He was likewise dissolving any relationship which may have existed between himself and Galbraith. No right to recover for commissions on the Mott business had accrued to him during the time he was agent of the company and none could accrue to him under his contract thereafter. After plaintiff left the company, before the commission on the Mott. business accrued, plaintiff in writing released his right to all future commissions and thus barred himself from a right to recover in this case. Judgment reversed, and no new trial ordered.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, SHARPE, NORTH, and FEAD, JJ., concurred.