[Civ. No. 9670. First Appellate District, Division One.—July 25, 1936.]

HENRY A. DINNING, Appellant, v. ZELLERBACH PAPER COMPANY (a Corporation) et al., Respondents.

Arthur J. Harzfeld, John L. McNab, Robert Littler and Robert W. Scott for Appellant.

Philip S. Ehrlich and Albert A. Axelrod for Respondents.

THE COURT.—The plaintiff brought an action to recover from the defendants damages in the amount of $4,500 for the breach of an alleged oral contract to employ him as broker in effecting insurance on a number of automobiles and auto-trucks owned by one or other of the defendants or by their employees.

The contract alleged was that on or about March 23, 1928, plaintiff promised and agreed with defendants to secure for them "prior consideration or preference" in the purchase of paper by a group of corporations including, among others, the Pacific Mutual Life Insurance Company, in consideration of a promise on the part of the defendants that, as long as such prior consideration and preference was accorded them, they would place with the Pacific Indemnity Company, through plaintiff as broker, all insurance which they might carry. on said automobiles and auto-trucks. The plaintiff alleged performance of the agreement on his part, and that up to the time of bringing suit the plaintiff had secured for the defendants said preference in the purchase of paper, but that since May 1, 1931, the defendants have placed said insurance through another broker, resulting in the loss to plaintiff of commissions.

The cause was tried by the court, which made findings to the effect that the defendants had not made the promise alleged, and also that the plaintiff had not performed the promise upon which he bases his right of recovery.

The plaintiff moved for a new trial upon the ground, among others, of newly discovered evidence which he could not with reasonable diligence have discovered and produced at the trial. The motion was denied, and the plaintiff has appealed from the judgment entered against him upon the findings. As grounds for the appeal he contends that the evidence sustains neither the finding that there was no contract between the parties nor that the plaintiff failed of performance,

and also assigns as error the refusal of the trial court to grant a new trial.

1. The record discloses that in and prior to the year 1928 defendant Zellerbach Paper Company and Zellerbach Corporation (predecessor of defendant Crown Zellerbach Corporation) were the owners of a number of automobiles and auto-trucks upon which they were carrying insurance in the Zurich Insurance Company, which had been effected through Marsh and McLennan (a corporation) as broker. The policies of insurance were to expire on May 1st of that year; and the plaintiff, who was in business relations with Swett and Crawford, the Pacific Coast agent of the Pacific Indemnity Company, conceived the idea that he would endeavor to have said insurance transferred to that company upon the expiration of the existing policies, with himself as broker in the transaction. He accordingly some time during the month of February visited the offices of defendants. At the trial the plaintiff as a witness in his own behalf testified concerning this visit. He stated that at that time he saw Mr. E. M. Mills, Mr. M. R. Higgins and Mr. I. Zellerbach, all officers of one or other or of both the defendant corporations; that ''I asked them if they were prepared to turn over the automobile insurance to me as broker for placing it in the Pacific Indemnity Company in return for my securing for them, for the Zellerbach interests, a preference in the purchase of paper by a group of companies known as the Lee Phillips group . . . , and I asked that the placement of the insurance be given to the Pacific Indemnity Company, and it would justify them in taking the business away from the then insurance carrier. I said that I would like to have them turn that business over to me as broker as of May 1, 1928. They discussed the proposition among themselves. I believe Mr. Higgins asked Mr. Mills if he thought well of the idea, and Mr. Mills said he did; and he then asked Mr. Zellerbach what he thought of it, and Mr. Zellerbach thought it was a chance to sell more paper, and he said he was agreeable to it. I then said 'I need no further information other than the assurance that the thing will be carried out' . . . I advised them I would get in touch with Mr. Swett, who was a director of the Pacific Indemnity Company and who assured me he could get this preference paper busi-

ness from these companies . . . and I excused myself. This is substantially all that took place at that meeting.

It is upon this conversation, and this only, that the plaintiff predicates the contract or agreement set forth in the complaint.

We can see nothing in this testimony which would compel, or even justify, a finding that the defendants entered into an agreement with the plaintiff in the terms of the proposal made to them. The intimations by Mr. Mills and Mr. Zellerbach that they regarded with favor the proposal were made to Mr. Higgins (who was the particular official of the defendants charged with insuring the defendants' property), and, while of assistance to him in reaching a decision, were not made to the plaintiff—as he himself readily testified on cross-examination. It would indeed be most unusual for an official of a corporation entrusted with the care of large interests to enter into a binding agreement of indefinite duration, with an individual who up to that moment was a stranger to him, in this casual manner and without any investigation. Mr. Higgins, it is seen, said nothing to the plaintiff to cause him to believe that he had secured, as the result of a few moments' conversation an agreement which, if made, would have yielded him large sums of money; and, as a witness for the defendants, Mr. Higgins denied that he then or at any time promised or agreed with the plaintiff that he should be appointed defendants' broker for the placing of their automobile insurance.

Much light is shed upon the question by what subsequently occurred. Following this meeting plaintiff called on Mr. Swett (who, in addition to being a member of Swett and Crawford, was a director of the Pacific Indemnity Company) and told him of his conversation with the officials of the defendants, whereupon Mr. Swett stated he would immediately set the machinery in motion for transferring some paper business to the Zellerbach interests, and about a week later plaintiff called at the office of Mr. Mills and informed him of what he had done. A short time later, at the end of February or early in March, accompanied by Mr. Swett, he made a third visit to Mr. Mills' office in furtherance of their common effort, and the latter suggested that they see Mr. Higgins. They accordingly went to that gentleman's office.

To him Mr. Swett stated that he was prepared to take over the automobile insurance on May 1st and asked to see the present policies. They were produced; Mr. Swett examined them and stated he would duplicate them on their expiration at no greater cost. He also stated that he was arranging to divert paper business to the Zellerbach Paper Company. In his testimony concerning this interview Mr. Swett stated: "I told Mr. Higgins who I was and the companies I represented; and I stated I was very anxious to get the automobile insurance of the Crown Zellerbach Corporation; and he said 'Well, who is the head of your company?, and I said 'Mr. Lee Phillips' . . . and Mr. Higgins stated 'Why, I know Mr. Phillips very well, and I would like very much to have Mr. Phillips have our insurance business, all things being equal.' He said he was associated with Mr. Phillips in the old days—as he put it—of the Pacific Mutual Life Insurance Company. . . . And with that, as I remember it, Mr. Higgins asked his secretary or someone to bring in the automobile insurance policies . . . and I looked the policies over and stated that we would be very, very pleased to handle the account, that we could duplicate those policies at the same rates, terms and conditions, and anything he could do to influence the business to us would be very much appreciated by me, and I in turn would tell Mr. Phillips of my visit and conversation with him, and I also stated that we would be very glad to cooperate with them in the purchase of paper." The witness was then asked this question: "Was there anything said with reference to Mr. Dinning's participation in the matter at that time?" and he answered: "No, sir. Mr. Higgins told me that their brokers were Marsh and McLennan, and that any business placed with us would have to be placed through Marsh and McLennan, their insurance brokers, as they handled all their insurance affairs."

The plaintiff testified to a subsequent meeting with Mr. Higgins. He stated: "In the early part of April, 1928, I went in to see Mr. Higgins with reference to the renewal of the insurance which was expiring May 1, 1928. Mr. Higgins informed me that the matter had been closed and that I should arrange for my participation through Marsh and McLennan, who had been handling the Zellerbach insurance for many years." Adopting the suggestion of Mr. Higgins

the plaintiff called on these brokers, and learned from them that they had been instructed by Mr. Higgins to make a participation with him in their commissions on this insurance, which they did, and they carried out that arrangement not only for the year 1928–29, but also during two subsequent years, after which the defendants placed this insurance through other brokers although in the same insurance company. These brokers refused to divide their commission with the plaintiff, creating a situation which he regarded as a breach by the defendants of their alleged agreement to appoint him broker for their automobile insurance.

2. The trial court not only found that there was no contract, but that, assuming one to have been entered into, the plaintiff failed of performance.

This finding also is amply supported by the record, which shows that some little time before the commencement of the annual period for which the plaintiff is seeking to recover damages the purchasing agent of the Pacific Mutual Life Insurance Company—the one concern in the group from which defendants had been receiving large orders for paper —was instructed by his superior officer in that corporation to give no preference to any manufacturer or dealer but to buy where he "could buy the cheapest, with service and price the main features", and that he followed such instructions, thus putting an end to any preference theretofore shown to the defendants.

3. Finally, appellant urges that the trial court erred in denying his motion for a new trial.

Included in the grounds of the motion was that of newly discovered evidence which the plaintiff could not with reasonable diligence have produced at the trial; and his argument in support of his contention is directed to that ground. The newly discovered evidence was disclosed by an affidavit of J. McCann Davis, who, in 1928 and subsequent years, was manager of Marsh and McLennan, wherein he stated that in a conversation with Mr. Higgins on or about April 1, 1928, he had been told by him that the defendants had entered into an agreement with the plaintiff to place their automobile insurance in the Pacific Indemnity Company and to make him the broker therefor. In an affidavit of Higgins filed in reply to that by Davis this statement was denied.

These affidavits were addressed to the judge who had just tried the case and who, after giving to them due consideration, denied appellant's motion. In passing upon a similar question in *Bennington* v. *National Packing Co.,* 122 Cal. App. 313 (at p. 317) [9 Pac. (2d) 857], this court said: "In order that we may reverse the order of the trial court it must affirmatively appear to this court that the trial court abused its discretion in denying the motion for new trial. The rule governing appellate courts in passing on the action of the trial court in denying a motion for new trial upon the ground of newly discovered evidence is thoroughly settled and clearly stated in *Baule* v. *Drobatz,* 6 Cal. App. 594, at 596 [92 Pac. 666, 667], as follows: 'It is sufficient to say that the question of whether newly discovered evidence could with reasonable diligence have been discovered and produced at the trial, and the question whether, if it had been produced, a different conclusion might have resulted, were questions addressed to the sound legal discretion of the trial court, and its action will not be disturbed unless it appears that its discretion has been manifestly abused. (*Oberlander* v. *Fixen & Co.,* 129 Cal. 690 [62 Pac. 254]; *People* v. *Buckley,* 143 Cal. 375, 392 [77 Pac. 169]; *People* v. *Sing Yow,* 145 Cal. 1, 4 [78 Pac. 235].)' " We find no such abuse of discretion here.

It results from the foregoing that the judgment should be affirmed, and it is so ordered.