CLINTON DAVIDSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE PLANNING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FLORA S. DAVIDSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CLINTON DAVIDSON, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 93500, 93501, 93502, 93503, 93504.

Promulgated February 13, 1941.

*Albert Hubschman, Esq., Louis Goldring, Esq.,* and *Carl Sherman, Esq.,* for the petitioners.

*George R. Sherriff, Esq.,* and *Richard D. Duncan, Esq.,* for the respondent.

OPINION.

OPPER: By his notice of deficiency for 1934 respondent included in petitioner's income:

\* \* \* the net income for 1934 of Estate Planning Corporation, after disallowance of a deduction claimed for bond interest in amount of $24,000.00. The income of Estate Planning Corporation appears to consist entirely of original commissions on life insurance policies and annuity insurance policies sold by you (and your sub-agents) under contracts in your name personally. In view of the nature of the income involved, it is held by this office to be taxable in your hands, subject to the ordinary and necessary business expenses attaching thereto as provided by the income tax law.

\*       \*       \*       \*       \*       \*       \*       \*

Even before the decisions in *Helvering* v. *Horst*, 311 U. S. 112, and *Helvering* v. *Eubank*, 311 U. S. 122, it was clear that income from personal services to be performed in the future was taxable to the earner, regardless of his anticipatory assignment, and irrespective of the validity of that assignment for general purposes apart from questions of taxation. *Lucas* v. *Earl*, 281 U. S. 111. It is now settled that the same rule applies to compensation for services already rendered, *Helvering* v. *Eubank*, *supra*, or to income from property. *Helvering* v. *Horst*, *supra*. The question, then, is simplified to the point where the decisive issue here is the determination of the person who is to be treated, for tax purposes, as the earner.

We institute this inquiry as to who earned the income in question with an examination of the services for which it was paid; for it seems to us to follow that, when this has been ascertained, the one who performed the services will be disclosed as the one who earned the compensation therefor. The income involved is insurance commissions; that is, remuneration comparable to brokerage paid by insurance companies for procuring purchasers from them of insurance policies. It is the person who performs this service, the agent procuring the application for insurance, to whom for this service the insurance company is indebted for the commission. *McCloskey* v. *Thompson*, 26 Misc. Rep. 735; 56 N. Y. S. 1076; *Esterly-Hoppin Co.* v. *Burns*, 135 Minn. 1; 159 N. W. 1069; *Morehead* v. *Reem*, 236 N. W. 802 (Mich.). The facts amply demonstrate to our mind that in the comparatively intricate plan of operation adopted by petitioner and the corporation no one but petitioner can be said to conform to that description of the earner of the insurance commissions. Not only was he the one designated by the insurance company as its agent to take the application,[1] but the insurance contracts were treated as his business,[2] he was designated by the corporation and the insured as the one to whom the commissions were to be paid by the insurers and he and not the corporation received the checks representing such payments, which were made payable to him. The services of obtaining the application for insurance for which in its

---

[1] A "single policy" contract awarded to petitioner and conceded to be typical commences:

ORIGINAL
(For Agent)

January 5th, 1935.

Mr. Clinton Davidson
New York City

DEAR SIR: It is hereby agreed to allow you the following commissions on the premiums not exceeding in amount in any one year the first year's premium as paid in cash to the Society on Policy No. 9655,006 * * *.

[2] For example, a memorandum to one of the insurance companies, giving detailed information about a "prospect," inclosed in a letter signed by petitioner as president of the corporation, while itself unsigned is worded throughout in the first person singular.

simplest terms the commission is paid as compensation upon acceptance were thus treated by all the parties as having been rendered by petitioner.[3] We can not say that upon this record he was not the contributor of the services for which the income was received. Supporting this conclusion are the circumstances that petitioner and not the corporation was licensed to carry on an insurance brokerage business; that the insurance companies and their general agents, as a matter of practice, decline to appoint corporations as agents; and that it would have been illegal for the corporation to intervene in the transactions as the procurer of the insurance business. McKinney's Consolidated Laws of New York, Annotated (1917), Bk. 27, Insurance Law, sec. 91. That this is virtually conceded to be correct appears to us to follow from a statement of petitioner's position in the reply brief:

* * * The statute was strictly complied with in that the commissions were *paid by* the life insurance corporation *to,* and *each application was procured by,* a licensed agent [petitioner].

   \*       \*       \*       \*       \*       \*       \*

* * * The arrangement was exactly to the contrary. The corporation was *not* to act as the life insurance agent. Its services were in a peculiarly different field, i. e., estate planning. It did not receive the payments as commissions from the insurance carrier. It received the payments from Davidson on the basis of his contract with it.

To this it may be added that petitioner's receipt of the payments in question erects at the threshold a compelling inference that as recipient of the income he was taxable upon it. *National City Bank of New York* v. *Helvering* (C. C. A., 2d Cir.), 98 Fed. (2d) 93; *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417. Not only as a matter of factual burden of proof arising generally by virtue of the *prima facie* correctness of respondent's determination, but as a true legal presumption to be overcome by persuasive argument, we think this casts upon petitioner the necessity of showing that the legal effect of the transaction was to preclude his ownership of the funds received by him. In our view no satisfactory basis for such a conclusion has been established. That he might have become the debtor of the corporation is an irrelevant consideration on this aspect of the case; for that would be no more than an offsetting deduction, a distinct contention which we shall separately consider hereafter. As an assignment of all or part of the commissions the transaction would not only have been without legal effect under

---

[3] The Corporation's directors resolved that "* * * all commissions allowed him [petitioner] by Insurance Companies on initial premiums of policies written during that period to be turned over by him to the Company * * *." And when petitioner terminated this arrangement with the corporation his letter to it stipulated:

"2. You are to formulate such plans in connection with my insurance business for estates of the same character that has been heretofore furnished by your corporation."

586

petitioner's contract with the insurer [4] and under the controlling regulation of the domicile, *Wyatt* v. *McNamee*, 52 Misc. Rep. 127; 101 N. Y. S. 790, but, as we have seen, would also be ineffectual even assuming its validity, in any examination of tax incidence.

It may be recognized that activities which for present purposes we shall assume to have been those of the corporation were an essential inducement and preliminary to petitioner's success in obtaining the insurance business and receiving the compensation of which it was the root. In this phase of the matter an expenditure ordinarily and necessarily incurred by him would, in the usual circumstance, constitute the ground for a deduction as business expense. It may not be allowed, however, unless it is both ordinary and necessary, and compensation for services must be reasonable; and where as here it is the offshoot of an arrangement between an individual and his controlled corporation, it must survive more than the usual scrutiny for this to be established. *Botany Worsted Mills* v. *United States*, 278 U. S. 282; *Alexander Sprunt & Son, Inc.* v. *Commissioner* (C. C. A., 4th Cir.), 64 Fed. (2d) 424. We consider that the assignment to the corporation of the entire amount of the original commissions was not reasonable compensation to it for any contribution which it made to the earning of those commissions. As the originator and proprietor of a business writing upward of $4,000,000 of insurance annually, it is inconceivable that petitioner would have made such an arrangement at arm's length with a stranger. We are, accordingly, unable to determine that the payments due the corporation under the contract were the true measure of petitioner's expense and correspondingly deductible.

In the absence of any other gauge of a reasonable offset for the expense of obtaining the business, we might have been relegated to the figure which the corporation itself paid out for those purposes as the nearest approximation thereto. To a comparable deduction, however, petitioner was held to be entitled by respondent's original determination. The deficiency notice charged petitioner only with the net income of the corporation, with the result that petitioner's income was in turn reduced by the amount of such expenditures as were involved in the inducing operations conducted by the corporation. It was not petitioner's burden to prove in detail the propriety of the deductions thus permitted. Only two items of corporation expense were disallowed in this determination, of which one was interest on the corporation's bonds. While it is true that in litigation by which respondent is presumably bound it has been decided that the corporation was

---

[4] A typical "single policy" contract recites:

"a. No assignment of this agreement or of commissions hereunder shall be valid unless authorized in advance in writing by the Society [Insurer]."

entitled to such a deduction, *Estate Planning Corporation* v. *Commissioner* (C. C. A., 2d Cir.), 101 Fed. (2d) 15, a corresponding result does not necessarily follow as to the individual petitioner. For the question is to what extent the payment he made to the corporation was an ordinary and necessary accompaniment of his business as an insurance agent and a fair measure of the expense incurred in obtaining insurance customers for him. While advertising, salaries of agents, cobrokerage, fees to lawyers and accountants, and even general office rent and overhead can be seen to have some connection with the procurement of petitioner's insurance business, petitioner has not shown that payment of interest on the corporation's bonded indebtedness, which was based in the first instance on a somewhat nebulous item of good will acquired from petitioner, see *Estate Planning Corporation* v. *Commissioner*, *supra*, can have any such connection. Since this item was disallowed in the original determination and petitioner carries the burden of showing its correctness, that part of the corporation's expenditures is to be excluded from the amount of petitioner's payment to it which we find to have been a reasonable disbursement by petitioner for securing the business from which his income arose. The same applies to the comparatively small item of the corporation's organization expense.

It is true that by amended answer respondent seeks to increase the deficiency so determined by including in petitioner's income all of the corporation's gross income without offset for any disbursements. Since, in our view, however, respondent has failed satisfactorily to prove the amount of the commissions received by petitioner, apparently the only justification for a charge against him on that theory, and since respondent has in other respects failed to sustain his burden of proving the absence of petitioner's right to deductions, we are of the opinion that the attempt to increase the deficiency can not succeed. There are implications that not all of the insurance premiums which eventually found their way to the corporation were paid to Davidson in the first instance. But it is clear that the great bulk were, and if this was something less than all, petitioner, on whom rested the burden, has not shown to our satisfaction the extent by which this total should be diminished. However, he has made it clear that a small fragment of the corporation's receipts represented payment for its services, not insurance commissions. As to these amounts petitioner's income should not be increased. The result is that the amount originally determined, adjusted for payments which were shown to have been received by the corporation as compensation for its services and not through insurance premiums, is chargeable against petitioner as his income. To that extent respondent's determination is approved.

What has been said applies to the period prior to March 1, 1935. As of that date petitioner entered into a different arrangement with the corporation under which he himself received and retained the commissions and paid to the corporation for its services its own expenses plus 10 percent. We are not prepared to say that this arrangement was so apparently unreasonable as to require that it be disregarded. The amount so paid to the corporation was, it is true, charged back to petitioner in respondent's original deficiency determination by attributing to him the entire net income of the corporation, which included the sums so paid by him, or at least that was its effect. But if petitioner took the amount of this payment as a deduction from his own income as a business expense, a fact as to which the record is silent, respondent did not determine that it was unreasonable, since he made no attempt to disallow it as such. The factual basis for his determination was that "the income of Estate Planning Corporation appears to consist entirely of original commissions on life insurance policies and annuity insurance policies sold by you." To the extent that petitioner has shown that a part of the corporation's income consisted of his payment to the corporation for its services, and of a small item of other compensation for services similar to that involved in 1934, he has successfully demonstrated the error of respondent's assumption of fact. And, of course, if petitioner did not deduct his payments to the corporation from his own income, charging him with it again would be doubly unjustified. For that part of 1935, therefore, during which petitioner was operating under the new contract, the respondent's original determination is disapproved and for reasons similar to those already expressed his request for an increased deficiency is rejected.

With respect to the corporation, its taxable income should be adjusted to reflect the payments which are being charged to the individual petitioner.

The notices of deficiency also charge petitioner with the net income of the partnership, Davidson & Co., "because its gross income was derived largely from personal services rendered by" petitioner. This issue must be determined in favor of petitioner. It appears that the other members of the partnership contributed both capital and services to the business of the enterprise. In this situation we can not say that elements requiring the recognition of the partnership for tax purposes are lacking. *Walter W. Moyer*, 35 B. T. A. 1155. Respondent's inclusion of the proportionate parts of the partnership income in those of petitioner's wife and son is sustained, as petitioners concede it must be on that result.

Under the notices of deficiency and in the condition of the pleadings the issue as to the trust income, both with respect to the attempt

to attribute it to petitioner under sections 22 (a) and 166 and 167, raised for the first time on brief, and with respect to the inclusion of the distributive shares in the respective incomes of the beneficiaries of the trust, appears to be no more than an alternative contention. The notice of deficiency in the case of Clinton Davidson, Jr., states respondent's position to be:

> The income of the trust consisted of amounts paid to it by Estate Planning Corporation, allegedly as interest on bonds. * * * For the taxable year 1934, it is being held by this office that due to the nature of the income reported by Estate Planning Corporation, it is taxable not to the corporation but to the assignor of such income. Pending a final decision in these matters, the amount received by you from the trust is being included as interest income to you, in order to protect the interests of the Government.

The notice of deficiency in the Flora Davidson case is similar. Since we have determined the primary issue in respondent's favor, it is unnecessary to consider his arguments for the application to petitioner of the sections in question. Our disposition of petitioner's liability likewise carries with it the necessity of eliminating the items of trust income in adjusting the deficiencies determined against petitioner's wife and son.

Petitioner's motion for judgment, upon which decision was reserved at the hearing, is accordingly denied and the proceedings will be disposed of in accordance with the foregoing opinion.

*Decisions will be entered under Rule 50.*