[Civ. No. 11498.   First Dist., Div. One.   Sept. 22, 1941.]

HERBERT HANLEY, Appellant, v. MARSH & McLEN-NAN–J. B. F. DAVIS & SON, LTD. (a Corporation), et al., Respondents.

788

James M. Hanley and Herbert Chamberlin for Appellant.

Orrick, Dahlquist, Neff & Herrington, Herbert O. Hepperle, Justin M. Jacobs and Garret McEnerney II for Respondents.

PETERS, P. J.—Plaintiff appeals from a judgment of nonsuit. Plaintiff and defendants are insurance brokers operating in the San Francisco area. The present action was brought to recover brokers' commissions on certain fire insurance policies on the public school properties of San Francisco. The commissions on such policies, with the exception of $815, were paid to defendants. Plaintiff contends that he, rather than defendants, was entitled to these commissions. The trial court ruled that he had established no legal or equitable basis upon which he was entitled to the commissions, and granted defendants' motion for a nonsuit.

The amended complaint contains four counts. Common to each count are allegations that plaintiff and defendants are insurance brokers, and that defendants received certain commissions to which plaintiff is entitled. The first cause of action is in the form of a common count for money had and received in the sum of $10,642.42. Payment of $815 is alleged, leaving an alleged unpaid balance of $9,827.42. The second cause of action also is in the form of a common count for money had and received, this cause of action alleging an unpaid balance of $5,952.81. These two causes of action are predicated upon the fact that on September 1, 1934, cover notes were obtained by the San Francisco Board of Education insuring school properties in the amount of $5,000,000. On

December 1, 1934, additional insurance in the form of cover notes was obtained by the board in the amount of $10,000,000. On May 7, 1935, these cover notes were replaced by policies in the total amount of over $15,000,000, which policies expired June 30, 1937. Brokers' commissions on this insurance amounted to $16,595.23, of which but $815 was paid to plaintiff. In the first two causes of action he seeks to recover from defendants the difference, or $15,780.23—$9,827.42 plus $5,952.81.

The third cause of action seeks recovery of the $15,780.23 on the theory that there was a binding rule of the Insurance Brokers Exchange of San Francisco, of which plaintiff and the defendants are members, under which plaintiff as the one who "initiated" such insurance, is entitled to the commissions. The fourth cause of action seeks to recover the commissions on the basis of a custom alleged to prevail among insurance brokers in San Francisco that the broker who first "initiates" the insurance is entitled to the commissions.

In view of the fact that a nonsuit has been granted, we are presented on this appeal with the question as to whether plaintiff has presented evidence which, regardless of conflicts, would support a judgment in his favor. In discussing the evidence all inferences and every favorable presumption fairly arising from the evidence adduced must be considered as facts proved in favor of plaintiff. (*Mitchell Camera Corp.* v. *Fox Film Corp.*, 8 Cal. (2d) 192 [64 Pac. (2d) 946].) Tested by these standards the record shows the following facts:

School properties in San Francisco are under the control of a school district, the governing board of which is the Board of Education of the City and County of San Francisco. This district is an entity separate and distinct from the city and county. (*Esberg* v. *Badaracco*, 202 Cal. 110 [259 Pac. 730].) Until 1934 the board failed to place any fire insurance on its many school properties. Since 1881 there has been a statutory duty imposed on such boards to insure their properties. (Sec. 6.2 of the School Code; sec. 1608 of the Political Code, formerly sec. 1617 of that code.)

Appellant, an insurance broker, attended all meetings of the board where insurance was discussed during the years 1934 to 1937. On several occasions members of the board requested his presence at meetings. The minutes of the board frequently mention the fact that he was present and that he

made various suggestions and presented information. On many different occasions he acted as broker for the board, placed considerable insurance for the board, and received the appropriate commissions. Early in 1934 appellant became aware of the fact that the school buildings in San Francisco were uninsured against fire, and that sec. 6.2 of the School Code required that such insurance be carried. He thereupon started upon a program to induce the board to secure fire insurance, and, of course, to secure the business of placing such insurance for himself. At a meeting of the board on March 13, 1934, he called to the attention of the members that it was their statutory duty to insure the various school properties against fire. The whole fire insurance problem was discussed by the board at that meeting. At about this time the board was rebuilding some sixteen schools for the purpose of making those schools earthquake proof. The board employed plaintiff to secure for it so-called ''reconstruction'' insurance on these sixteen schools. As broker for the board appellant secured such insurance, and collected the appropriate commissions. He was, of course, desirous of securing the business of insuring all of the school properties. To this end, at the request of the board, he secured an opinion from the city attorney confirming his statement that it was the statutory duty of the board to insure its properties. The board authorized him to secure rates from the Board of Fire Underwriters, and such rates were secured by appellant. He attended meetings of the board, he met with the insurance committee of the board, he made many suggestions concerning insurance, he presented a comprehensive plan for insurance on all school properties. In every reasonable and proper way he attempted to secure the business of writing this insurance for himself. In August of 1934 a fire occurred at the Girls High School, one of the buildings covered by the reconstruction insurance. Appellant acted as broker in adjusting this loss and received a formal vote of thanks from the board for his services. In November, 1934, a fire occurred at the Lowell High School, which was also covered by the reconstruction insurance. Again appellant acted on behalf of the board in adjusting the loss.

The August fire at the Girls High School apparently caused the board to realize the risk involved in not carrying in-

surance. On September 1, 1934, the insurance committee of the board secured temporary insurance in the form of cover notes in the sum of $5,000,000. The action of the insurance committee was approved by the board at a meeting held on September 4, 1934. The minutes of the board do not disclose that appellant had anything to do with placing this insurance. Appellant testified that, from his meetings with the board, and particularly with the chairman of its insurance committee, he knew that this insurance was to be placed through Finn and Elbow, general agents; that he informed that firm that such insurance was to be placed through that firm. However, there was no evidence offered by appellant other than his own conclusion that he "placed" this insurance. According to his testimony, the chairman of the insurance committee telephoned to Mr. Cleary, then chief administrative officer of the city, and Mr. Cleary, at the request of the board, placed the insurance with Finn and Elbow by telephoning them. The evidence clearly shows that this temporary insurance was placed without any arrangement involving an insurance broker. This insurance was placed with ten insurance companies picked by Cleary, in lots of $500,000 each. It was intended as temporary coverage while rates and building values were worked out.

As already pointed out, a fire occurred at Lowell High School, one of the buildings covered by the reconstruction insurance, early in November, 1934. The board again took action. On November 7, 1934, it authorized an additional $5,000,000 of fire insurance, and later the same month, after a fire in another school not covered by the reconstruction insurance, but covered by the cover notes of September 1, 1934, it authorized its insurance committee to place whatever additional insurance was required until such time as definite figures could be worked out. On November 30, 1934, the board authorized an additional $5,000,000 of fire insurance. On that date the chairman of the insurance committee wrote to Mr. Brooks, then purchaser of supplies for the city, and directed him to secure cover notes for this additional insurance. Mr. Brooks secured, on behalf of the board, cover notes in the total sum of $10,000,000, dated December 1, 1934. The actions of the chairman of the insurance committee, and of Mr. Brooks, were approved by the board on December 4, 1934. This temporary insurance was not placed by any brokers, but was placed by Mr. Brooks.

In the letter to Mr. Brooks above-referred to, the board recognized that it needed the assistance of brokers to work out rates, valuations of its properties, and to work out a proper form of policy. Although not required to purchase its insurance through the city purchasing department, it being an independent entity, it nevertheless determined to use the facilities of that office in securing the insurance. The board expressly appointed Mr. Brooks its agent to select the broker or brokers who should negotiate the permanent insurance required. The letter states in part: ''We will appreciate it, if you will, further, at a very early date select the insurance brokers who are to be named the official brokers of record for contacting the Board of Fire Underwriters, in order that they may confer with the Board of Fire Underwriters for development of rates, form of general policy, etc., for submittal to our insurance committee as to the determination of final basis for these policies.'' Appellant was present at the meeting of December 4, 1934, when this letter and the actions of the insurance committee and of Mr. Brooks were approved by the board.

Mr. Brooks, acting pursuant to the power thus conferred, first employed respondent Marsh & McLennan as broker to arrange for the final form of this insurance. A short time thereafter Mr. Brooks designated respondent Johnson and Higgins as co-broker, and, about the middle of December, 1934, he designated respondent Cosgrove and Company as a co-broker. The three respondents were employed as brokers for the board with respect to both the five million and the ten million dollars of insurance, and were instructed to merge that insurance into a general plan. On December 18, 1934, Brooks wrote to the Board of Fire Underwriters informing that board that the three respondents had been appointed ''to act as our Insurance Brokers and to represent us in all matters pertaining to insurance.'' The letter also stated: ''This authority supersedes all former appointments and/or all letters of record or authorization.''

After the cover notes had been secured, the respondents, together with an engineer employed by the board of education, performed the usual services rendered by brokers of working out rates, valuations, form of policy, etc. When this work was completed by respondents the temporary cover notes were canceled, the amount of insurance was increased

to $18,400,000, and actual policies were written on May 7, 1935.

There is evidence that, after the issuance of the cover notes, and, after the appointment of respondents as brokers, Cleary and Brooks dictated, to some extent at least, the various fire insurance companies in which the insurance was ultimately placed. Each of the three respondent brokers undertook its employment with the understanding that other brokers were to participate in the commissions, and it is a fair inference from the record that it was understood that Cleary was to make the allocation of commissions between the brokers. The commissions, less $815, which was paid to appellant, were paid to respondents in various percentages.

This constitutes a fair summary of the evidence introduced by appellant. So far as his first two causes of action based on common counts are concerned, he does not clearly define the theory upon which he claims he is entitled to recover the commissions paid to respondents. Throughout his briefs appellant refers to himself as "insurance broker" for the board, and contends such relationship continued until terminated by the letter of December 18, 1934, to which reference has been made. He does not claim that he had a written contract of employment as insurance broker for the board during the period in question, nor that any resolution was passed employing him generally as insurance broker. It seems to be his theory that, because over a period of time the board employed him as broker to place specific insurance such as the reconstruction and other insurance, and, because of his other activities above mentioned, a contract, apparently one implied in fact, arose under which he was entitled to place all insurance secured by the board of education. He urges that, as broker for the board, he was entitled to place the $5,000,000 insurance represented by the cover note of September, 1934, and the $10,000,000 represented by the cover note of December, 1934. The thought that appellant suggests is that, although the board and its members are not made parties to this action, the placing of this insurance otherwise than through appellant constituted a breach of the board's employment of appellant as the board's broker. Predicated upon this basic premise, it seems to be his theory that he can recover from respondents for the breach of contract by the board, because the respondents knew of his "right" to this insurance business, and that respondents can-

not lawfully retain commissions on business which should have gone to appellant. It is urged that if respondents are permitted to retain the commissions, they will be ''unjustly enriched,'' and that the common count form of action was invented for the very purpose of preventing unjust enrichment.

The basic fallacy in appellant's argument is his assumption that the evidence, or the permissible inferences therefrom, would support a finding that he was employed by the board, expressly or impliedly, to place all of the board's insurance, or to place this insurance in particular. There is no evidence, or no inference from the evidence, that would support such a conclusion. ■ The mere fact that he was employed by the board to place the reconstruction and other specific policies of insurance gave him no right to demand that any other policy be placed through him. By employing appellant as broker for the placing of specific policies of insurance the board in no way restricted itself from employing other brokers for future policies. The law is clear that an insurance purchaser may employ a new broker at any time. (*Erlin* v. *National Union Fire Ins. Co.,* 217 Cal. 374 [18 Pac. (2d) 660]; *Clinchy* v. *Grandview Dairy,* 283 N. Y. 39 [27 N. E. (2d) 425].) ■ The agency created by employing a broker to secure a specific policy terminates when that insurance has been secured and accepted. (*Stevenson* v. *Sun Insurance Office,* 17 Cal. App. 280 [119 Pac. 529]; *Leon Irwin & Co.* v. *Board of Com'rs. of New Orleans,* 176 La. 13 [145 So. 123]; *Hermann* v. *Niagara Fire Ins. Co.,* 100 N. Y. 411 [3 N. E. 341, 53 Am. Rep. 197].) ■ The fact that appellant brought to the attention of the board its duty to insure, the fact that he conferred with the board about fire insurance, the fact that he submitted various plans, secured rates, etc., did not create any contract, express or implied, between him and the board, that if such insurance were secured it would be placed through him. All of his activities were attempts to secure that business for himself—proper attempts on his part to solicit that business. ■ The mere fact that a prospective customer requests proposals from a broker places the customer under no obligation to accept the proposal when made. The asking for proposals is a mere call for an offer, and it is the broker that makes the offer by submitting his proposal. No contract comes into existence

unless or until the prospective customer accepts that offer, and he is under no duty to accept. Any and all proposals may be rejected for any reason or without any reason. Every broker in soliciting business assumes the risk of being able to persuade his prospective customer to deal through him. These principles are well-settled and need not be elaborated upon. (See, *Cronin* v. *National Shawmut Bank*, 306 Mass. 202 [27 N. E. (2d) 717], where the problem is discussed at length; see, also, *Esterly-Hoppin Co.* v. *Burns*, 135 Minn. 1 [159 N. W. 1069].) ▮ The mere fact that appellant may have "initiated" the insurance in the sense that he discovered the need therefor and called it to the attention of the board and performed the other acts already set forth, created no obligation on the board to secure the insurance thus "initiated" through appellant. (*Cronin* v. *National Shawmut Bank, supra; Dinning* v. *Zellerbach Paper Co.,* 15 Cal. App. (2d) 623 [59 Pac. (2d) 880].)

▮ Under these elementary and fundamental principles there is no possible theory under which appellant could recover as against respondents on the first two causes of action. Reduced to its simplest terms, the case is simply one where the appellant worked diligently and hard to secure this business. The board, for reasons that do not appear, and none is necessary, decided to employ respondents to write this insurance. They did employ respondents and respondents did place the insurance. The facts that respondents may have out-maneuvered the appellant, or that the board considered it more politic or expedient to employ respondents, or that it might have been fairer to employ appellant, are all immaterial. That is one of the risks involved in such a competitive business. The point is that the board was a free agent, and for any good reason, or no reason at all, was legally entitled to employ whomsoever it desired to place this insurance. It elected to employ respondents, and appellant has no legal ground to complain.

▮ Appellant's next theory, embodied in his third cause of action, is that he is entitled to recover under a rule of the Insurance Brokers Exchange of San Francisco, of which appellant and respondents are members, which rule, it is urged, has the force of a contract. The rule reads as follows: "In all cases where insurance business passes from one member to another member all return commission on such business thus passing shall be assumed and paid by the new

broker.'' Appellant contends that this rule, as interpreted by members of the exchange, means that a broker who has ''initiated'' insurance is entitled to the commission thereon although it is actually placed by another broker. He sought to offer testimony, his own, of this interpretation of the rule. The court excluded the proffered testimony on the ground that the language of the rule would not admit of such an interpretation. This ruling of the trial court was correct. It is obvious that the rule in question applies to the situation where a customer changes brokers after insurance has been placed, and then the policy is canceled. The refund due the purchaser on the commission paid to the first broker must be paid by the new broker. The reason for such a rule is obvious. Where the second broker induces the customer to cancel an existing policy, it is done usually for the purpose of substituting one of his own. Under such circumstances, the second broker should pay the refund of the commission due the customer. But such a rule cannot be distorted into a rule that when one broker ''initiates'' insurance by making an offer to the customer, but the customer elects to accept the offer of a second broker, then the second broker must pay his commission to the first. It is obvious that under such circumstances, no ''insurance business passes from one member to another member.'' Until the offer has been accepted by the customer there is no insurance business to ''pass'' one to the other. ■ The proffered testimony was not offered to interpret the rule, but to vary the terms of that rule. Parol testimony is not admissible for that purpose.

■ The fourth cause of action is based on the theory that there is a custom among brokers in San Francisco that the broker who first ''initiates'' insurance is entitled to the commissions. The trial court refused to permit appellant to testify as to the existence of the alleged custom. This ruling was correct. This is so for at least two reasons. In the first place, what appellant must establish in order to prevail on this theory is not only that such a custom exists, but also that such custom has the binding force of a contract between all insurance brokers. Appellant neither pleaded nor offered to prove the fact that, if such custom did exist, it had the binding force of a contract. In the absence of such pleading, or offer of proof, it is quite clear that whether such a custom exists or not is immaterial. Unless it had the

binding force of a contract, such a custom would lie in the field of ethics and not in the field of contracts. ■ In the second place, usage and custom may be introduced as an instrument of interpretation but may not be used to create a contract. This thought is thus expressed in § 1870 of the Code of Civil Procedure as follows: "In conformity with the preceding provisions, evidence may be given upon a trial of the following facts: . . . 12. Usage, to explain the true character of an act, contract, or instrument, where such true character is not otherwise plain; but usage is never admissible, except as an instrument of interpretation; . . . " (See, *Rottman* v. *Hevener,* 54 Cal. App. 485 [202 Pac. 334].) The rule is generally recognized throughout the United States. (*Great Lakes Coal & Dock Co.* v. *Seither Transit Co.,* 220 Fed. 28; *Thompson* v. *Riggs,* 5 Wall. (72 U. S.) 663 [18 L. Ed.] 704.)

■ Appellant complains that the trial court erroneously precluded him from introducing evidence on some of the issues involved. Thus, appellant sought to prove his activities in placing other insurance policies for the board and in adjusting certain losses under those policies. He also sought to prove the procedure followed by the board in placing insurance, and other matters. Appellant was not prejudiced by these rulings. Had all the evidence offered been introduced, appellant would not have proven a cause of action against respondents. The point is that, under the facts as disclosed by the record, including the rejected testimony, there is no possible theory upon which appellant may recover against respondents.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.

A petition for a rehearing was denied October 22, 1941, and appellant's petition for a hearing by the Supreme Court was denied November 17, 1941.